# UNITED STATES EXPRESS COMPANY *v.* MINNESOTA.

### ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 708.   Argued January 16, 17, 1912.—Decided February 19, 1912.

In determining whether a state tax on earnings is constitutional this court is bound by the decision of the state court as to what classes of earnings are included in estimating the earnings to be taxed.

A State may tax property within the State although it is used in interstate commerce.

A State may not burden interstate commerce by taxing its commerce, but it may measure the value of property of a corporation engaged in interstate commerce within the State by the gross receipts, and impose a tax thereon if the same is in lieu of all taxes upon the property of such corporation. *Oklahoma* v. *Wells, Fargo & Co., ante,* p. 298, distinguished.

It is difficult, at times, to draw the line between state taxes that are unconstitutional as burdening interstate commerce and a legitimate property tax measured in part by income from interstate commerce. While the determination by the state court that a tax so measured is a property tax is not binding on this court, in this case, this court will not say that the conclusion is not well founded.

The Minnesota statutes, Revised Laws, 1905, Chapter 11, taxing express companies on their property employed within the State six per cent of the gross receipts in lieu of all other taxes, is an exercise in good faith of legitimate taxing power, and is not an unconstitutional burden upon interstate commerce.

THE facts, which involve the constitutionality of a statute of the State of Minnesota taxing express companies, are stated in the opinion.

*Mr. Robert E. Olds* and *Mr. Frank B. Kellogg,* with whom *Mr. C. A. Severance* was on the brief, for plaintiff in error:

The Minnesota statute, as construed by the courts of

that State, imposes a tax upon gross receipts arising from interstate commerce. The construction given the statute is not only unnecessary but erroneous. *Pacific Express Co.* v. *Seibert,* 142 U. S. 339.

The earnings from interstate transfer business constitute receipts derived from interstate commerce. That the carrier operated a line wholly within the State is immaterial, so long as the function which it performed was a part of a continuous journey from one State to another, under a single, continuous contract of carriage. Whether carried on by one, or by two or more express companies, the commerce involved is itself interstate, and no part of it can be divested of its interstate character by the incidental circumstance that it may be carried on by one of the companies wholly within state lines. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Fargo* v. *Michigan,* 121 U. S. 20; *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. 326, 343, 344; *Norfolk & Western R. R. Co.* v. *Pennsylvania,* 136 U. S. 114, 119; *New York* v. *Knight,* 192 U. S. 21; *Galveston & San Ant. Ry. Co.* v. *Texas,* 210 U. S. 217; *Southern Pacific Terminal Co.* v. *Int. Com. Comm.,* 219 U. S. 498; *People* v. *Miller,* 178 N. Y. 194.

The tax upon the receipts from "interstate transfer business" is invalid as an attempt by the State to impose a direct burden upon interstate commerce. *State Freight Tax,* 15 Wall. 232; while in *State Tax on Railway Gross Receipts,* 15 Wall. 284; *Railroad Co.* v. *Maryland,* 21 Wall. 456; *Peik* v. *Chic. & N. W. Ry. Co.,* 94 U. S. 164; *Munn* v. *Illinois,* 94 U. S. 113; *C., B. & Q. Ry. Co.* v. *Iowa,* 94 U. S. 155; the rate making power of the State was sustained, in *Wabash, St. L. & P. Ry. Co.* v. *Illinois,* 118 U. S. 557, the power of the States over interstate rates was definitely denied; and see cases *supra* and *Ratterman* v. *West. Un. Tel. Co.,* 127 U. S. 411; *Leloup* v. *Port of Mobile,* 127 U. S. 640; overruling *Osborne* v. *Mobile,* 16 Wall. 479; *Western Union Telegraph Co.* v. *Pennsylvania,* 128 U. S. 39; *Western Union*

*Telegraph Co.* v. *Alabama*, 132 U. S. 472; *Lyng* v. *Michigan*, 135 U. S. 161, 166; *Crutcher* v. *Kentucky*, 141 U. S. 47.

The cases of *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217; *Postal Telegraph Co.* v. *Adams*, 155 U. S. 688; *Erie Railroad* v. *Pennsylvania*, 158 U. S. 431; *Louis. & Nashv. R. R.* v. *Kentucky*, 161 U. S. 677, were sustained only because laid on intrastate receipts.

By the latest announcement of this court, in *Galveston, Harrisburg & San Antonio R. R. Co.* v. *Texas*, 210 U. S. 217, an act was held unconstitutional because it laid a tax directly upon the gross receipts.

The Supreme Court of Minnesota has sustained the tax at bar on the theory that it is a tax upon the property of the company and not upon the earnings.

It has been held, however, that property outside of the State cannot be taxed by the State. *Fargo* v. *Hart*, 193 U. S. 490.

The lieu of other taxes clause does not make the act constitutional. The State of Minnesota cannot, by merely refraining from levying the ordinary property taxes against a company engaged in interstate commerce, acquire the right to tax the interstate commerce carried on by that company. If this could be done then all restraints upon state action in this respect could be released by mere non-action, and it would become a perfectly simple matter for States to acquire a free hand in taxing such commerce. There is hardly any branch of interstate commerce which can be carried on without the use of property in some form. On the hypothesis under discussion, all that any State need do, under such circumstances, is to neglect to tax the tangible property and then impose a direct tax upon the gross receipts arising from the business. *Fargo* v. *Michigan*, 121 U. S. 230; *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1; *Pullman Co.* v. *Kansas*, 216 U. S. 56.

Transportation between two points within the same State but passing out of the State intermediately is inter-

state commerce. *Lehigh Valley Ry. Co.* v, *Pennsylvania,* 145 U. S. 192; *Hanley* v. *Kansas Southern Rd. Co.,* 187 U. S. 617.

*Mr. Lyndon A. Smith,* Attorney General of Minnesota, and *Mr. William J. Stevenson,* with whom *Mr. George T. Simpson* was on the brief, for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State of Minnesota, bringing in review a judgment of that court sustaining a tax assessed against the United States Express Company. 114 Minnesota, 346.

The Express Company is an unincorporated association, with its principal office in the State of New York, engaged in the express business in the United States. The business is carried on under contracts between the Company and railroads for the transportation by the railroad companies of goods forwarded by the Express Company, upon the payment by the Express Company, as compensation for such service, of a certain percentage of the gross receipts of the Express Company derived from the business carried over the lines of the railroads. Under such contracts the Company is engaged in carrying on express business over many lines of railroads in the United States, amounting in the aggregate to some 30,000 miles of road. It carries on express business in this manner in the State of Minnesota upon the Chicago, Rock Island & Pacific Railway, Duluth & Iron Range Railroad and, for a time, the Chicago, Milwaukee & St. Paul Railway. The Company has offices in many States, the District of Columbia and Canada and in various European countries. It has about fifty offices in the State of Minnesota.

The law in question (Revised Laws of Minnesota, 1905, Chapter 11), provides for the taxation of express companies. Section 1013 of the act requires every ex-

press company doing business in the State, between January 1 and February 1, to file with the state auditor, in such form as he may prescribe, a statement, duly verified, showing the entire receipts, including all sums earned or charged, whether received or not, for business done within the State, including its proportion of gross receipts for business done in the State by such company in connection with other companies. The statement must further show the amount actually paid by such express company to the railroads within the State for the transportation of its freight for the year, giving the amount paid to each railroad company; and also show the entire receipts of the company for business done within the State, including its proportion of gross receipts for business done within the State in connection with other companies, after deducting the amounts paid for transportation to railroads within the State. Section 1015 provides that the auditor shall annually, between March 1 and April 1, ascertain the gross receipts of such company by deducting the sums thus annually paid by it for the transportation of freight within the State from its entire receipts for business done in the State, including its proportion for business done within the State in connection with other companies.

Section 1019 provides that annually, on or before March 15, the auditor shall assess upon each company a tax of six per cent. upon its gross receipts for business done in the State for the preceding calendar year, as determined by the auditor, which shall be in lieu of all taxes upon its property, and shall deliver to the state treasurer for collection a draft upon the company for such sum.

The action was brought by the State of Minnesota to recover certain items which it was claimed were omitted from the returns of the Express Company, and which were properly the subject of taxation under the statute. Under the stipulated facts these items embraced in paragraph III of complaint, Schedule No. 1, consist of:

"Earnings of $54,209.19 constituting earnings on express business for the years 1899 to 1908, inclusive, which express business was made up entirely of shipments delivered by the shipper to an express company in the State of Minnesota, consigned to an ultimate consignee at a second point in the state of Minnesota, which shipments were forwarded by express between the point of origin and point of destination over lines of railroad, which lines were partly within and partly without the state of Minnesota. That is to say, all of these shipments necessarily passed out of the state of Minnesota in transit. Said amount, namely, $54,209.19, is based upon the total earnings on said shipments and is not that part of said earnings apportionable to the transportation which was performed within the state of Minnesota. In arriving at said amount the total earnings received by the Express Company upon said shipments have been taken regardless of what proportion of the through carry was performed within the state of Minnesota. About 91 per cent of the mileage under this item is within Minnesota."

Alleged omitted earnings on which back taxes were claimed under paragraph III of complaint, Schedule No. 2, such omitted earnings amounting to $9,702.89, on which back taxes were claimed of $504.47, were made up as follows:

"Earnings derived by the company from the following express shipments: (a) Shipments received by an express company from a shipper at a point of origin outside of the state of Minnesota addressed to and destined to a consignee within the state of Minnesota; or (b) shipments delivered to an express company by a shipper in the state of Minnesota and addressed to and destined to a consignee without the state of Minnesota; or (c) shipments delivered to an express company by a shipper without the state of Minnesota and addressed to and destined to a consignee without the state of Minnesota, passing through the

state of Minnesota in transit, as to all of which said shipments, either in class a, class b, or class c, the defendant received said shipments at a point in the state of Minnesota and forwarded them over its lines to a second point within the state of Minnesota, the transportation while in the hands of the defendant being performed wholly within the state of Minnesota. The transportation in connection with such shipments outside of the state of Minnesota was performed by connecting companies other than the defendant. Each of said shipments which constituted said amount of $9,702.89 in Schedule No. 2 of paragraph III of complaint was made upon a through rate and a through waybill and bill of lading showing the origin and ultimate destination thereof, and consisted of a single transportation transaction commencing with the delivery by the shipper to an express company and continuing until and not ending before the delivery of the shipment to the consignee at the point of ultimate destination to which the shipment was addressed."

Taxes are not claimed or collected upon shipments of express matter in the classes named where the same express company performs the transportation service both within and without the State of Minnesota.

A question was also made as to the constitutional validity of the tax upon money orders issued by the express company, but that objection has not been pressed in argument here.

The plaintiff in error contends that the assessment of the tax upon its earnings from shipments by a consignor in the State of Minnesota to an ultimate consignee within the State, which shipments were forwarded by express between the points of origin and destination over railroads partly within and partly without the State of Minnesota (paragraph III, Schedule No. 1), is an unconstitutional exaction, in that it is an attempt of the State to regulate interstate commerce, and is without due process of law.

As to such shipments, the Supreme Court held that nine per cent. of the taxes claimed on this class of earnings should be deducted from the amount of the recovery allowed in the court of original jurisdiction, since it was disclosed that only 91 per cent. of the mileage was within the State. For this part of the decision the Minnesota court relied upon *Lehigh Valley R. R. Co.* v. *Pennsylvania,* 145 U. S. 192. An examination of that case shows that it is decisive of the present one on this point, and we need not further discuss this feature of the case.

As to the transportation described in paragraph III, Schedule No. 2, from points within the State to points without the State, from points without the State to points within the State, and from points without the State to points without the State, passing through the State, the transportation outside of the State being performed by connecting companies, the Supreme Court of Minnesota held that it was the intention of the legislature, in the statute under consideration, to include the earnings from these classes within the State in the gross receipts upon which the tax is based. This construction of the statute is binding upon us.

The transportation was made upon a through rate and through bill of lading, and, it is stipulated, consisted of a single transportation transaction, commencing with the delivery by the shipper to the Express Company and continuing until the delivery of the shipment to the consignee at the ultimate destination. This was clearly interstate commerce, and the Federal question made in this connection is: Is this tax a burden upon interstate commerce, and, therefore, an infraction of the exclusive power of Congress, under the Constitution, to regulate commerce among the States?

It is thoroughly well settled in this court that state laws may not burden interstate commerce. As one form of burden may exist in taxing the conduct of interstate

commerce, such taxation has been uniformly condemned. Examples of cases of that character may be found in *Fargo* v. *Michigan,* 121 U. S. 230; *Philadelphia & Southern Steamship Co.* v. *Pennsylvania,* 122 U. S. 326; *Ratterman* v. *Western Union Telegraph Co.,* 127 U. S. 411; *Leloup* v. *Port of Mobile,* 127 U. S. 640; *Western Union Telegraph Co.* v. *Pennsylvania,* 128 U. S. 39; *Western Union Telegraph Co.* v. *Alabama,* 132 U. S. 472; *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217.

While we have no disposition to detract from the authority of these decisions, this court has had also to consider and determine the effect of statutes which undertake to measure a tax within the legitimate power of the State by receipts which came in part from business of an interstate character. In that class of cases a distinction was drawn between laws burdening interstate commerce, and laws where the measure of a legitimate tax consists in part of the avails or income from the conduct of such commerce.

In *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217, this court sustained a tax which required every railroad operated within the State to pay an annual tax for the privilege of exercising its franchises therein, determined upon a proportion of gross transportation receipts, which in that case were shown to be those of a railroad partly within and partly without the State, such gross receipts being derived from its entire business, state and interstate. The resort to the gross receipts, in the opinion of the court, was merely a means of ascertaining the business done by the corporation, and thus measuring the tax, which was held to be within the power of the State.

In *Wisconsin & Michigan Railway Co.* v. *Powers,* 191 U. S. 379, a tax was sustained which made the income of the railway company within the State, including interstate earnings, the *prima facie* measure of the value of the property within the State for the purpose of taxation. In the course of the opinion this court said (p. 387):

"In form the tax is a tax on 'the property and business of such railroad corporation operated within the State,' computed upon certain percentages of gross income. The *prima facie* measure of the plaintiff's gross income is substantially that which was approved in *Maine* v. *Grand Trunk Railway Co.*, 142 U. S. 217."

A question, in principle, not unlike the one here presented, came before this court in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107. In that case it was contended that the income of the corporations sought to be taxed under the Federal law, included, as to some of the companies, large investments in municipal bonds and other securities beyond the Federal power of taxation. It was held, after a review of some of the previous cases in this court, that, where the tax was within the legitimate authority of the Federal Government, it might be measured, in part, by the income from property not in itself taxable, and the distinction was undertaken to be pointed out between an attempt to tax property beyond the reach of the taxing power and to measure a legitimate tax by income derived, in part at least, from the use of such property. *Flint* v. *Stone Tracy Co.*, *supra*, 162, 3, 4 and 5.

The right of the State to tax property, although it is used in interstate commerce, is thoroughly well settled. *Postal Telegraph Co.* v. *Adams*, 155 U. S. 688; *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Ficklen* v. *Shelby County*, 145 U. S. 1, 22. The difficulty has been, and is, to distinguish between legitimate attempts to exert the taxing power of the State and those laws which, though in the guise of taxation, impose real burdens upon interstate commerce as such. This difficulty was recognized in *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas*, 210 U. S. *supra*, wherein the possible differences between the decisions in *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 U. S. *supra*, and *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. *supra*, were commented upon and ex-

plained. Mr. Justice Holmes, speaking for the court, said (p. 227):

"'By whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution.' *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 697. See *New York, Lake Erie & Western R. R. Co.* v. *Pennsylvania,* 158 U. S. 431, 438, 439. The question is whether this is such a tax. It appears sufficiently, perhaps from what has been said, that we are to look for a practical rather than a logical or philosophical distinction. The State must be allowed to tax the property and to tax it at its actual value as a going concern. On the other hand the State cannot tax the interstate business. The two necessities hardly admit of an absolute logical reconciliation. Yet the distinction is not without sense. When a legislature is trying simply to value property, it is less likely to attempt to or effect injurious regulation than when it is aiming directly at the receipts from interstate commerce. A practical line can be drawn by taking the whole scheme of taxation into account. That must be done by this court as best it can."

In that case the statute of Texas was condemned, because it appeared to the court to be an attempt to reach the receipts from interstate commerce by a tax of one per cent., or what was equal to the same thing, on gross receipts arising from such commerce, when it appeared from the judgment of the state court and the argument on behalf of the State that another tax on the property had already been levied, covering its full value as a going concern. The tax under consideration was held to be merely an effort to reach the gross receipts, not disguised by the name of an occupation tax or in any way helped by the words "equal to."

Upon like reasoning the statute of Oklahoma was con-

demned in the case of *Oklahoma* v. *Wells, Fargo & Co.*, decided to-day, *ante,* p. 298.

Appreciating the difficulty emphasized in the *Galveston Case* of drawing the line between taxes that burden interstate commerce and those whereby the legislature is simply undertaking to impose a property tax within its legitimate power, measured in part by the income from interstate commerce transactions, how does the present case stand? The Supreme Court of Minnesota construed the tax to be a property tax, measured by the gross earnings within the State, which, under their construction of the tax, included the earnings here in question. That court held that the statute was part of a system long in force in Minnesota, passed under the authority of the state constitution, and was intended to afford a means of valuing the property of express companies within the State. While the determination that the tax is a property tax measured by gross receipts is not binding upon this court, we are not prepared to say that this conclusion is not well founded, in view of the provisions and purposes of the law.

The statute itself provides that the assessments under it "shall be in lieu of all taxes upon its property." In other words, this is the only mode prescribed in Minnesota for exercising the recognized authority of the State to tax the property of express companies as going concerns within its jurisdiction. If not taxed by this method, the property is not taxed at all. In this connection, the language of Mr. Justice Peckham in *McHenry* v. *Alford,* 168 U. S. 651, 671, while it was not necessary to the decision of the case, is nevertheless apposite:

"When it is said, as it is in this act, that the tax collected by this method shall be in lieu of all other taxes whatever, it would seem that it might be claimed with great plausibility that a tax levied under such circumstances and by such methods was not in reality a tax upon

the gross earnings, but was a tax upon the lands and, other property of the company, and that the method adopted of arriving at the sum which the company should pay as.taxes upon its property was by taking a percentage of its gross earnings."

The tax in the present case is not like those held invalid in the *Galveston Case* and the *Oklahoma Case*, being in addition to other state taxation reaching the property of all kinds of the express company. The tax to be collected in part from the earnings of interstate commerce was part of a scheme of taxation, seeking to reach the value of the property of such companies in the State, measured by the receipts from business done within the State. The statute was not aimed exclusively at the avails of interstate commerce (*Philadelphia Steamship Co.* v. *Pennsylvania, supra*), but, as in the *Maine Case*, was an attempt to measure the amount of tax within the admitted power of the State by income derived, in part, from the conduct of interstate commerce. The property of express companies, being much of it of an intangible character, is difficult to reach and properly assess for taxation. This difficulty led this court in *Adams Express Co.* v. *Ohio,* 165 U. S. 194; *S. C.,* 166 U. S. 185, to sustain a tax upon the property of an express company, which property was considered a part of one money-earning organization extending through many States.

As this court said in *Postal Tel. Co.* v. *Adams,* 155 U. S. 688–696, 697:

"Doubtless, no State could add to the taxation of property according to the rule of ordinary property taxation, the burden of a license or other tax on the privilege of using, constructing, or operating an instrumentality of interstate or international commerce or for the carrying on of such commerce; but the value of property results from the use to which it is put and varies with the profitableness of that use, and by whatever name the exaction

may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution."

We think the tax here in question comes within this principle. There is no suggestion in the present record, as was shown in *Fargo* v. *Hart*, 193 U. S. 490, that the amount of the tax is unduly great, having reference to the real value of the property of the company within the State and the assessment made. The statute embraces receipts from all the business done within the State, including much which is purely local.

Upon the whole, we think the statute falls within that class where there has been an exercise in good faith of a legitimate taxing power; the measure of which taxation is in part the proceeds of interstate commerce, which could not, in itself, be taxed, and does not fall within that class of statutes uniformly condemned in this court, which show a manifest attempt to burden the conduct of interstate commerce, such power, of course, being beyond the authority of the State.

We find no error in the judgment of the Supreme Court of the State of Minnesota, and it is

*Affirmed.*