# CUDAHY PACKING COMPANY *v.* STATE OF MINNESOTA.

## ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 32.   Argued April 26, 1917.—Decided April 15, 1918.

In so far as the property, tangible and intangible, constituting a freight car line, is regularly and habitually used or employed in a State, it is within the taxing power of that State although chiefly devoted or applied to interstate transportation, and may be taxed at its real value as part of a going concern.

In determining whether a state tax is to be viewed as a tax on property measured by earnings or a tax on earnings, the view of the state court and legislature, though not conclusive, will not be rejected by this court unless ill founded.

Under a law of Minnesota, part of a general system applied to railroads, telephone lines, etc., a company owning freight cars which it furnished to railroads for a fixed compensation per mile of travel and which were employed by the railroads within and without the State in hauling both interstate and intrastate commerce, was taxed at a stated per cent. of its gross earnings from the mileage within the State, in lieu of other taxes on the property so engaged, the tax being treated by the state court and legislature as a property tax, and not being in excess of what would be legitimate as an ordinary tax on such property, tangible and intangible, taken at its real value as part of a going concern. *Held*, that the tax was a property tax, not a tax on gross earnings burdening interstate commerce, and was not distinguishable from the tax sustained in *United States Express Co. v. Minnesota*, 223 U. S. 335.

*Held, further*, that the tax was not to be deemed double or excessive from the fact that the receipts of the railroads from shipments in these cars, less the rental paid to the company, were made a factor in valuing the property on which the railroads were taxed.

129 Minnesota, 30, affirmed.

THE case is stated in the opinion.

*Mr. Robert E. Olds*, with whom *Mr. Frank B. Kellogg,* *Mr. Cordenio A. Severance* and *Mr. Thomas Creigh* were on the brief, for plaintiff in error.

*Mr. Lyndon A. Smith*, Attorney General of the State of Minnesota, with whom *Mr. Egbert S. Oakley*, Assistant Attorney General of the State of Minnesota, was on the brief, for defendant in error.

Mr. Justice Van Devanter delivered the opinion of the court.

A tax, for each of the years 1907 to 1912, inclusive, imposed under a law of Minnesota (Acts 1907, c. 250; 1909, c. 473; 1911, c. 377) against the Cudahy Packing Company as a freight line company, and sustained by the Supreme Court of the State (129 Minnesota, 30), is here in question. Whether the tax constitutes an unconstitutional restraint or burden on interstate commerce is the matter for decision.

The company is an Illinois corporation and operates plants in Iowa, Missouri and Nebraska for slaughtering live stock and converting the same into fresh meats and other articles of commerce. It sells the products throughout the United States, maintains branch houses in several States, including three in Minnesota, and owns a line of refrigerator cars wherein the products are shipped to the branch houses and places of consumption. Under a contractual arrangement it supplies these cars to the railroads for use in such transportation and receives therefor a fixed compensation per mile of travel. In the territory embracing Minnesota this compensation or rental is one cent per mile whether the cars be loaded or empty. Usually the cars are moved to particular destinations with loads of the company's products and are returned empty to be loaded again, but where it is practicable to do so the railroads are free to carry other freight in them on the

return trip. The company pays the usual tariff rates for the transportation of its products, just as though the railroads owned the cars, and also bears the expense of all repairs save such as become necessary through negligent handling by the railroads. The use made of the cars in Minnesota consists in transporting the company's products (a) across the State from points without on one side to points without on another, (b) from points without to points within the State and the reverse, and (c) between points within the State. Of their total mileage in the State 90 per cent. is in interstate and 10 per cent. in intrastate transportation. The average number of cars in the State per day ranges from 10 to 12.

The cash value of each car, as a separate article of tangible property, is from $700 to $900, and the intangible property incident to their combined use under the contractual arrangement with the railroads is also, as the record shows, of substantial value. The tax in question is all that is assessed against the company in respect of the cars or the intangible property. It has other tangible property in the State, not part of its car line, whereon it pays the usual local taxes. .

The receipts of the railroads from shipments carried in these cars in Minnesota, less the compensation or rental paid to the company, are added to the other gross earnings of the railroads from business in the State and the total is taken as the value for purposes of taxation of the property which the railroads own or operate in the State for railway purposes.

As construed and applied by the state court, the Minnesota law requires a freight line company, meaning a company furnishing or leasing cars to railroads for freight transportation, to report annually its gross earnings from the operation of its car line within the State and to pay, in lieu of other taxes on the property so employed, a tax fixed at a stated per cent. of such earnings. That court

holds that this law is an exertion of the power of the State to tax the property within its limits from which the earnings are derived and is intended to embody a practical method of reaching and valuing that property, tangible, and intangible, for taxing purposes.

In so far as the property constituting this car line is regularly or habitually used or employed in Minnesota it is within the taxing power of the State, although chiefly devoted or applied to interstate transportation. *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18; *Adams Express Co.* v. *Ohio,* 165 U. S. 194; *s. c.,* 166 U. S. 185; *American Refrigerator Co.* v. *Hall,* 174 U. S. 70; *Union Refrigerator Co.* v. *Lynch,* 177 U. S. 149. This is not questioned; but it is insisted that the tax imposed is not a property tax but one laid directly on the gross earnings. Of course, if it is laid on the earnings as such, they being derived largely from interstate commerce, it is an unconstitutional restraint or burden on such commerce and void. *Fargo* v. *Michigan,* 121 U. S. 230; *Philadelphia & Southern Steamship Co.* v. *Pennsylvania,* 122 U. S. 326; *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217. On the other hand, if what is done is to reach the property and not to tax the gross earnings, the latter being taken merely as an index or measure of the value of the former, it well may be that the objection urged against the tax is untenable; for, as this court has said, "by whatever name the tax or taxes may be called that are fixed by reference to the value of the property, if they are not imposed because of its use in interstate or foreign commerce, and if they amount to no more than would be legitimate as an ordinary tax upon the property, valued with reference to the use in which it is employed, they are not open to attack" as restraining or burdening such commerce. *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 367; *Postal Telegraph Co.* v. *Adams,* 155 U. S. 688; *Wisconsin & Michigan Ry. Co.* v. *Powers,* 191

U. S. 379, 387; *Fargo* v. *Hart*, 193 U. S. 490, 499; *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas, supra.*

As before stated, the state court regards the tax as imposed in respect of the property rather than the earnings, and the same view seems to be taken by the legislature, for the Act of 1909 speaks of the tax as "a tax upon its [the company's] property" and the Act of 1911 says "the value of such property [that used within the State] for purposes of taxation is to be determined" by reference to the gross earnings from the mileage within the State. True, this local view is not conclusive on this court, but it cannot be rejected unless it can be said to be ill founded.

The question of the nature and effect of taxes more or less like this has been repeatedly considered in this court. In some instances its solution has been attended with considerable difficulty, for while the controlling general principles have long been well settled it has not been easy to apply them to all the varying situations presented. A short reference to two recent cases in which the earlier decisions were reviewed will leave little to be said in solving the question here. We refer to *Meyer* v. *Wells, Fargo & Co.*, 223 U. S. 298, and *United States Express Co.* v. *Minnesota*, 223 U. S. 335, both decided on the same day. The former involved a tax in Oklahoma of a stated per cent. of the gross receipts of an express company doing both a local and an interstate business in that State. The statute called the tax a "gross revenue tax" and declared that it was to be "in addition to the taxes levied and collected upon an *ad valorem* basis upon the property and assets" of the company. We held that the tax could not be sustained as a tax on the gross earnings, they being partly derived from interstate commerce, and also held that it could not be regarded as a property tax, because, as the statute disclosed, all the property of the company in the State was to be reached and valued in another way. The other case involved a tax in Minnesota of a desig-

nated per cent. of the gross earnings of an express company from business done in that State, the business being partly local and partly interstate commerce. The statute declared that the tax was to be in lieu of other taxes on the company's property, and the state court held that it was not in reality a tax on the gross earnings, but was a tax on the property, the earnings being taken merely as a measure of the value of the property for taxing purposes. We accepted and gave effect to that holding, not as being conclusive on us, but on the grounds that the property from which the earnings were derived was not to be otherwise taxed, that the tax was part of a system intended to reach the full value of the company's property in the State as reflected by the gross earnings, and that the amount of the tax did not appear to be in excess of what would be legitimate as an ordinary tax on the property, valued with reference to its use as part of a going concern. The case dealing with the Oklahoma tax was distinguished by pointing out that that tax could not be regarded as a property tax, because it was to be in addition to another tax reaching the full value of the company's property in the State.

The law imposing the present tax is closely patterned after the one exacting the tax upheld in *United States Express Co.* v. *Minnesota,* and contains the same declaration that the tax shall be in lieu of other taxes on the property. The statutes differ only in minor details and are both parts of a general system which the State applies to railroads, telephone lines and the like. So, unless this tax be otherwise distinguishable, it must, under the decision in that case, be regarded as a property tax and not as laid on the gross earnings.

Because the usual tax rate, if applied to the cash value of the cars taken separately, would result in an appreciably lower tax, it is insisted that the tax imposed is in excess of what would be legitimate as an ordinary tax

on the property. But the contention proceeds on an erroneous assumption. The State is not confined to taxing the cars or to taxing them as separate articles. It may tax the entire property, tangible and intangible, constituting the car line as used within its limits, and may tax the same at its real value as part of a going concern. The record makes it reasonably certain that the property, valued with reference to its use and what it earns, is worth considerably more than the cash value of the cars taken separately—enough more to indicate that the tax is not in excess of what would be legitimate as an ordinary tax on the property taken at its real or full value.

Because the receipts of the railroads from shipments in these cars, less the rental paid to the company, are made a factor in valuing for taxation the property on which the railroads are taxed, it is contended that the cars are taxed twice, once to the company and again to the railroads, and are excessively valued. The contention apparently assumes that the receipts from such shipments arise solely from the use of these cars, whereas they arise in part from the use of the tracks, locomotives, fuel, labor and the like provided by the railroads. Not improbably only a minor part is fairly attributable to the use of cars. In any event, the company has an interest in the car line which yields it a rental of one cent for each mile of travel. This interest is taxable and the State values it for that purpose by the rental received. In valuing the property on which the railroads are taxed the amount of the rental is deducted from their earnings. This plainly discloses a purpose to avoid taxing the same property twice or at more than its value, measured by what it earns.

We think the tax is not distinguishable from that sustained in *United States Express Co.* v. *Minnesota.*

*Judgment affirmed.*