PULLMAN COMPANY *v.* RICHARDSON, AS TREASURER OF THE STATE OF CALIFORNIA.

HINES, AS DIRECTOR GENERAL OF RAILROADS, ET AL. *v.* RICHARDSON, AS TREASURER OF THE STATE OF CALIFORNIA.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

Nos. 143–148, and 149.  Argued December 4, 5, 1922.—Decided March 12, 1923.

1. A State may tax that part of the property of a carrier engaged in interstate and local business which is permanently located or commonly used within the State, according to its fair value as part of a going concern, measured with reference to the gross receipts from both local and interstate business.  P. 338.
2. A tax, measured in this way, which is called a property tax, which is imposed in lieu of all other taxes upon the carrier's property in the State, which is not in excess of what would be a legitimate tax

on such property, valued as part of a going concern, nor relatively higher than taxes on other classes of property, does not discriminate against interstate commerce. P. 339.

3. A state statutory provision that a foreign corporation failing to pay a tax shall be excluded from doing business in the State would be void as applied to interstate commerce. P. 339.

4. The tax here involved, based on the California Constitution (Art. XIII, § 14, as amended, 1910) and on subsequent statutes, was not intended to reach income from property situated or business done outside of the State. P. 340.

185 Cal. 484, affirmed.

Error to judgments of the Supreme Court of California affirming judgments for the defendant in actions brought against the State Treasurer to recover money paid, under protest, as taxes.

In the first six cases, the taxes were paid and the actions brought by the Pullman Company. In the last of the cases, the taxes were paid while the business of the Company was under federal control, and the action brought by the Company and the Director General of Railroads.

Mr. *Cordenio A. Severance,* with whom Mr. *Gustavus A. Fernald* and Mr. *Burke Corbet* were on the brief, for plaintiffs in error.

There is no doubt that a State is entitled to tax instrumentalities of interstate commerce within the State and that, in so doing, it may take into account "intangible values" accruing from their use as part of a unit system of transportation. The so-called unit system of taxation approved in *Adams Express Co.* v. *Ohio,* 165 U. S. 227, and other cases, need only be referred to. It is but one method of ascertaining a fair valuation of the property taxed. Gross-receipts or gross-earnings systems of taxation may be used as a method of arriving at the same result; but the State may not tax interstate commerce itself, or the earnings therefrom, or property situated without the State; and if, under the circumstances, the tax may be said to be so directly aimed at interstate

earnings as to evidence an intention to levy upon them, as such, the tax will be declared void as an unlawful burden upon interstate commerce. In determining this question, the controlling matter is not the expressed intention of the legislature, nor the manner in which the law is administered, but the effect of the act.

The difficulty has been in applying the foregoing principles to the particular case.

However, the expressed intention of the legislature, as well as the manner in which the law is administered, may be, and should be, considered to such extent as it is or may be an indication that the gross receipts are aimed at and the purpose of such aim, in a particular case.

[The following cases were reviewed: *State Tax on Railway Gross Receipts*, 15 Wall. 284; *State Freight Tax*, 15 Wall. 232; *Fargo* v. *Michigan*, 121 U. S. 230; *Philadelphia & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Ratterman* v. *Western Union Tel. Co.*, 127 U. S. 411; *Western Union Tel. Co.* v. *Pennsylvania*, 128 U. S. 39; *Leloup* v. *Mobile*, 127 U. S. 640; *Western Union Tel. Co.* v. *Alabama*, 132 U. S. 472; *Lyng* v. *Michigan*, 135 U. S. 161; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339; *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217; *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688; *Wisconsin & Michigan Ry. Co.* v. *Powers*, 191 U. S. 379; *Fargo* v. *Hart*, 193 U. S. 490; *Galveston, etc., Ry. Co.* v. *Texas*, 210 U. S. 217; *Western Union Tel. Co.* v. *Kansas*, 216 U. S. 1; *Pullman Co.* v. *Kansas*, 216 U. S. 56; *Ludwig* v. *Western Union Tel. Co.*, 216 U. S. 146; *Meyer* v. *Wells Fargo & Co.*, 223 U. S. 298; *United States Express Co.* v. *Minnesota*, 223 U. S. 335; *Lehigh Valley R. R. Co.* v. *Pennsylvania*, 145 U. S. 192; *Ewing* v. *Leavenworth*, 226 U. S. 464; *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217; *St. Louis Southwestern Ry. Co.* v. *Arkansas*, 235 U. S. 350; *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68; *Ohio Tax Cases*, 232 U. S. 576; *Kansas City, etc., Ry.*

*Co.* v. *Kansas,* 240 U. S. 227; *Kansas City, etc., R. R. Co.* v. *Stiles,* 242 U. S. 111; *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450; *Union Tank Line Co.* v. *Wright,* 249 U. S. 275; *Wallace* v. *Hines,* 253 U. S. 66.]

This tax is aimed so directly at gross receipts as to constitute an unlawful burden on interstate commerce and a tax upon the income of property and business without the State.

No reference was made to the value of the property in ascertaining the tax. The theoretical method alleged to have been adopted by the Tax Commission for determining whether the gross receipts tax is equivalent to an *ad valorem* tax is fallacious and misleading.

The situation is exactly like that in *Fargo* v. *Michigan,* 121 U. S. 230, and similar to that in other kindred cases.

The burden of sustaining the tax rests with the State. *Bank of California* v. *Roberts,* 173 Cal. 402; *Galveston, etc., Ry. Co.* v. *Texas,* 210 U. S. 217; *Foote* v. *Maryland,* 232 U. S. 494.

The forfeiture clause of the tax law renders it invalid. *Atchison, Topeka & Santa Fe Ry. Co.* v. *O'Connor,* 223 U. S. 280; *Pickard* v. *Pullman Southern Car Co.,* 117 U. S. 34; *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Leloup* v. *Mobile,* 127 U. S. 640; *Allen* v. *Pullman's Palace Car Co.,* 191 U. S. 171; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1; *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350; *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688.

*Mr. U. S. Webb,* Attorney General of the State of California, and *Mr. Raymond Benjamin,* for defendant in error, submitted.

Mr. Justice Van Devanter delivered the opinion of the Court.

These were actions by the Pullman Company against the Treasurer of California to recover moneys paid under

protest as state taxes. Each action related to a designated part of the tax for a distinct year and was brought on the theory that the part designated was invalid because imposed under constitutional and statutory provisions repugnant to the Constitution of the United States. The Treasurer prevailed in the court of first instance and in the Supreme Court of the State. 185 Cal. 484. The Pullman Company then brought the cases here on writs of error.

In 1910 California adopted an amendment to her constitution, § 14 of Article XIII, one purpose of which was to effect a separation of state from local taxation by subjecting public service corporations to a designated tax for state purposes and relieving them from taxation for county and municipal purposes. Referring to this feature of the amendment, the Supreme Court of the State said in *San Francisco* v. *Pacific Telephone & Telegraph Co.,* 166 Cal. 244, 248: " Under the old system, the property and franchises of the corporations above referred to were taxed for both state and local purposes. The amendment creates a new mode of taxing such property and franchises, and appropriates the revenue so raised to state purposes solely. The new method, by which taxes are collected exclusively for the state, is substituted for the former system, under which the same subjects were taxed for both state and local purposes."

The pertinent parts of the amendment are as follows (Laws 1910–11, p. xliv):

" Sec. 14 (a). . . . all sleeping car, dining car, drawing-room car, and palace car companies, . . . operating upon the railroads in this State; . . . shall annually pay to the State a tax upon their franchises, . . . rolling stock, . . . and other property, or any part thereof used exclusively in the operation of their business in this State, computed as follows: Said tax shall be equal to the percentages hereinafter fixed upon

the gross receipts from operation of such companies and each thereof within this State.   When such companies are operating partly within and partly without this State, the gross receipts within this State shall be deemed to be all receipts on business beginning and ending within this State, and a proportion, based upon the proportion of the mileage within this State to the entire mileage over which such business is done, of receipts on all business passing through, into, or out of this State.

"The percentages above mentioned shall be as follows: . . . on all sleeping car, dining car, drawing-room car, palace car companies, . . . three per cent; . . . Such taxes shall be in lieu of all other taxes and licenses, State, county and municipal, upon the property above enumerated of such companies except as otherwise in this section provided; . . .

"(e) . . . In the event that the above named revenues are at any time deemed insufficient to meet the annual expenditures of the State, including the above named expenditures for educational purposes, there may be levied, in the manner to be provided by law, a tax, for State purposes, on all the property in the State, including the classes of property enumerated in this section, sufficient to meet the deficiency. . . .

"(f) All the provisions of this section shall be self-executing, and the Legislature shall pass all laws necessary to carry this section into effect, and shall provide for a valuation and assessment of the property enumerated in this section, . . . The rates of taxation fixed in this section shall remain in force until changed by the Legislature, two thirds of all the members elected to each of the two houses voting in favor thereof."

Several acts to carry the amendment into effect were adopted from time to time, but it suffices here to say of them, first, that the computing percentage applicable to sleeping car, dining car, drawing-room car, and palace car

companies was increased to four per cent. in 1913 (c. 6, Laws 1913) and reduced to three and ninety-five hundredths per cent. in 1915 (c. 2, Laws 1915); secondly, that provision was made for enforcing the tax by either the usual tax sale or a suit in the name of the State (c. 335, §§ 20, 21, 24, Laws 1910–11; c. 6, § 5, Laws 1913), and, thirdly, that there was further provision that if the tax was not paid within a designated period the delinquent company, if a domestic corporation, "will forfeit its charter" and, if a foreign corporation, "will forfeit its right to do business in this State," and that the transaction of any business in the State on behalf of a company incurring any such forfeiture, except to settle its affairs, should be punished by substantial fines. Laws 1911, c. 335, § 24; Laws 1913, c. 6, § 5, and c. 320, § 9.

The taxes in question were levied under the new system in 1911 and six subsequent years. All were alike, save in particulars not material here; so it will be enough to state the facts relating to the tax levied in 1911.

The Pullman Company is an Illinois corporation engaged in operating sleeping and parlor cars on the railroads of the country. Some of its cars are operated between points in California, some between points within and points without that State and some through the State between points outside. In 1910 the company's gross receipts from all its operations within the State were $1,905,302.97. Of this sum $938,786.80 came from operations which began and ended in the State and $966,516.17 came from that part of the interstate operations which was within the State. The latter amount was arrived at by taking every service performed partly within and partly without the State and determining on a mileage basis what portion of the sum received therefor was attributable to the part of the service within the State. To illustrate: If a passenger was carried in a sleeping car from Oakland to Chicago for $14.00, and one-seventh of

the mileage was in California, $2.00 was deemed the gross receipt for so much of the service as was rendered in that State.

The gross receipts were calculated and reported by the company and the state officers accepted the calculation. The amount of the tax was computed by applying to the gross receipts the percentage rule prescribed by the amendment to the state constitution. In this way a tax of $57,159.08 was levied in 1911. Had the gross receipts from intrastate business alone been considered the tax would have been $28,163.61,—that is, $28,995.47 less than the actual levy.

The company objected to the consideration of the gross receipts from the interstate business, although they came only from service within the State, and objected to a corresponding part of the tax—the $28,995.47. That part was paid under protest and the first of these actions was brought to recover it,—an admissible course under the state law. Laws 1910–1911, c. 335, § 23; Laws 1913, c. 320, § 7. The other part was paid voluntarily and is not in controversy.

The company insists that the tax in question and the provisions therefor in the state constitution and statutes are invalid under the commerce clause of the Constitution of the United States, because (a) the tax is laid on gross receipts from interstate commerce, and (b) its payment is made a condition to continuing an interstate business within the State, and are invalid under the due process of law clause of the Fourteenth Amendment, because the tax is intended to reach income from property situated and business done without the State.

The state court holds that the tax is not a tax on gross receipts as such, but is in both name and essence a tax on property within the State, and that it is computed with reference to the gross receipts only as a means of adjust-

ing it to the real value of the property in the relation in
which the same is used.

The principles to be applied in cases of this class re-
peatedly have been considered by this court and are now
settled.

A State can neither tax the act of engaging in inter-
state commerce nor lay a tax on gross receipts therefrom.
In either case the tax would be a restraint or burden on
such commerce and its imposition an invasion of the
power of regulation confided to Congress by the com-
merce clause of the Constitution. *Fargo* v. *Michigan,* 121
U. S. 230; *Philadelphia & Southern S. S. Co.* v. *Pennsyl-
vania,* 122 U. S. 326; *Galveston, Harrisburg & San An-
tonio Ry. Co.* v. *Texas,* 210 U. S. 217; *Meyer* v. *Wells,
Fargo & Co.,* 223 U. S. 298.

The rule is otherwise with property used in interstate
commerce. A State within whose limits such property is
permanently located or commonly used may tax it. *Cud-
ahy Packing Co.* v. *Minnesota,* 246 U. S. 450, 453; *Wells,
Fargo & Co.* v. *Nevada,* 248 U. S. 165, 167; *Union Tank
Line Co.* v. *Wright,* 249 U. S. 275, 282. And, if the prop-
erty be part of a system and have an augmented value by
reason of a connected operation of the whole, it may be
taxed according to its value as part of the system, al-
though the other parts be outside the State;—in other
words, the tax may be made to cover the enhanced value
which comes to the property in the State through its
organic relation to the system. *Fargo* v. *Hart,* 193 U. S.
490, 499; *Galveston, Harrisburg & San Antonio Ry. Co.*
v. *Texas, supra,* p. 225; *United States Express Co.* v. *Min-
nesota,* 223 U. S. 335, 337; *Union Tank Line Co.* v.
*Wright, supra.*

In taxing property so situated and used a State may
select and employ any appropriate means of reaching its
actual or full value as part of a going concern,—such as
treating the gross receipts from its use in both intrastate

and interstate commerce as an index or measure of its value,—and if the means do not involve any discrimination against interstate commerce and the tax amounts to no more than what would be legitimate as an ordinary tax upon the property, valued with reference to its use, the tax is not open to attack as restraining or burdening such commerce. *Cudahy Packing Co.* v. *Minnesota, supra;* *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 367; *United States Express Co.* v. *Minnesota, supra;* *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas, supra,* p. 227; *Union Tank Line Co.* v. *Wright, supra.*

An examination of the tax in question in the light of these principles shows that the chief objection urged against it is not tenable. The provisions under which the tax is imposed call it a property tax, specify the property subjected to it and declare that it is in lieu of all other taxes on such property. The Supreme Court of the State holds it is a tax on the property specified. In no material respect does it differ from the tax which was recognized by this Court as a property tax in *United States Express Co.* v. *Minnesota* and *Cudahy Packing Co.* v. *Minnesota,* above cited. True, it is computed with special regard to the gross receipts, but this, as is fairly shown, is done merely as a means of getting at the full value of the property, considering its nature and use. The tax is not claimed to be in excess of what would be legitimate as an ordinary tax on the property valued as part of a going concern, nor to be relatively higher than the taxes on other kinds of property. There is no ground for thinking that it operates as a discrimination against interstate commerce.

The statutory provision that a foreign corporation which fails to pay the tax shall be excluded from doing business in the State requires but brief notice. It is not sought to be enforced here. The Pullman Company has not failed to pay the tax. The provision has not been

construed by the state court. If it be construed as covering interstate commerce it is void, for the right to engage in such commerce is not within the State's control. See *Western Union Telegraph Co.* v. *Massachusetts,* 125 U. S. 530, 554; *Leloup* v. *Port of Mobile,* 127 U. S. 640, 645; *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 695–696. The state court may construe it as confined to intrastate business. *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 368–369. In neither event would it affect the validity of the tax before us.

We find nothing in the provisions under which the tax was levied, in the decision of the state court, or in the record, which gives any support to the contention that the tax is intended to reach income from property situated or business done without the State.

*Judgment affirmed.*