## PACIFIC FRUIT EXPRESS CO. v. OKLA-HOMA TAX COMMISSION et al.

### No. 6559.

District Court, W. D. Oklahoma.
March 1, 1939.

Hayes-Richardson-Shartel-Gilliland & Jordan, of Oklahoma City, Okl., for plaintiff.

C. D. Cund, of Oklahoma City, Okl., for defendants.

VAUGHT, District Judge.

The plaintiff alleges that it is a foreign corporation, is not now doing and never has done business within the state

280

of Oklahoma; that it is incorporated under the laws of Utah with its principal offices in New York City and San Francisco; that it is and has been engaged in the business, wholly outside of the state of Oklahoma, of constructing or acquiring and furnishing to railway companies refrigerator cars for the transportation of perishable commodities, for the use of which it makes a charge against the railway companies which use its cars, of 2 cents per mile for its refrigerator freight cars and 2½ cents per mile for its refrigerator express cars, which charges are fixed wholly by tariffs filed with the Interstate Commerce Commission; and that *it does not now and never has furnished cars to shippers.*

The plaintiff further alleges that during the year commencing July 1, 1936 and ending June 30, 1937, it owned 34,662 refrigerator cars, and had under its control by lease, 2,711 additional refrigerator cars; that all of said cars were leased to railway companies operating throughout the United States, some of which companies operated through the state of Oklahoma; that during the said year there was a daily average of approximately 132.83 of plaintiff's cars within the state of Oklahoma, all of which were brought therein by said railway companies and were used solely by said railway companies in interstate commerce; that the plaintiff received and there became due and payable to the plaintiff from all of the railway companies which had leased plaintiff's cars, a sum of approximately $314,371.74.

That the Oklahoma Tax Commission held that under the laws of Oklahoma, the said property of the plaintiff was taxable within the state of Oklahoma and during said year assessed the plaintiff for taxes in the sum of $12,574.85. This sum was either paid by the plaintiff under protest or by the railway companies owing said sums to the plaintiff, in which event, over the protest of the plaintiff, and this suit is filed for the purpose of recovering said sum of $12,574.85 thus wrongfully and illegally paid, as contended by the plaintiff.

The defendants have filed a demurrer to plaintiff's petition alleging that the petition does not state a cause of action. ■ Of course, for the purposes of this demurrer, the defendants admit all of the material allegations in plaintiff's petition. The case, however, even under the defendants' careful analysis, reduces itself to one proposition. Does the Act levy an ad valorem tax against the cars of plaintiff?

Chapter 66, Article 8, Sessions Laws of 1937, 68 Okl.St.Ann. §§ 793, 802, is as follows:

"Section 1. *Freight Car Tax.*

"That Section 3, Chapter 97, Oklahoma Session Laws, 1933, be, and the same is hereby, amended to read as follows:

" 'All freight cars owned, operated, rented, leased or used by any freight line company, equipment company or mercantile company which are moved over, or used in the operation of the line of any railroad company, as herein defined, wholly or partially within this State, are hereby classified for the purpose of taxation; and a tax equivalent to four per centum (4%) of the gross earnings in this State is hereby levied on such freight cars; and such tax shall be in lieu of ad valorem taxes upon such freight cars, but nothing in this Act shall be construed to exempt from ad valorem taxation any real or personal property other than freight cars, or any freight cars which are not operated over the line of any common carrier railroad, as hereinbefore defined, upon which the gross earnings tax herein levied does not apply. It is hereby expressly provided, that the provisions of this Act shall apply to both public service and private corporations.

" 'The Oklahoma Tax Commission, upon its own initiative, may, and upon the complaint of any person who claims he is taxed too great a rate hereunder, shall take testimony to determine whether the taxes herein imposed are greater, or less than the general ad valorem tax for all purposes would be on such freight cars, if taxed on an ad valorem basis. The said Commission shall have the power and it shall be its duty to raise or lower the rate herein imposed to conform thereto.

" 'It is hereby declared to be the intention of the Legislature that the tax herein imposed be, as nearly as practicable, the equal of the amount of tax such freight line companies, equipment companies and mercantile companies would pay if their cars were taxed on an ad valorem basis, including any value inuring to such cars by reason of being a part of a going concern.

" 'In order to determine the amount of tax such companies would pay on an ad

valorem basis, said Commission may value all cars of any company as a unit and allocate to Oklahoma that proportion of the total value which the Oklahoma car mileage bears to the total car mileage of the cars of any such company during the twelve (12) months' period ending on June 30th, of any year, and may then apply to such value so ascertained, the average ad valorem tax rate applied to property throughout the State for that fiscal year.'

"Section 2. *Apportionment of Tax.*

"That Section 12, Chapter 97, Oklahoma Session Laws, 1933, be, and the same is hereby, amended to read as follows:

"'All revenues arising hereunder are hereby specifically appropriated and shall be used for the following purposes:

"'(a) Ninety-five per centum (95%) thereof shall be apportioned to the General Revenue Fund of the State of Oklahoma for the expense of the State Government, to be expended only pursuant to appropriations by the Legislature.

"'(b) Five per centum (5%) thereof shall be paid to the State Treasurer to the credit of the Oklahoma Tax Commission Fund to be paid out of said fund in payment of expenses necessarily incurred by said Commission in the performance of its lawful duties, and said fund, or so much thereof as may be necessary, is hereby appropriated for such purposes; provided, that any unexpended balance remaining in said fund at the end of any fiscal year shall revert to the General Revenue Fund of the State of Oklahoma.'"

The Constitution of Oklahoma in Article 10, Section 12, Okl.St.Ann., provides special forms of taxation as follow: "The Legislature shall have power to provide for the levy and collection of license, franchise, gross revenue, excise, income, collateral and direct inheritance, legacy, and succession taxes; also graduated income taxes, graduated collateral and direct inheritance taxes, graduated legacy and succession taxes; also stamp, registration, production or other specific taxes."

This section was amended by referendum petition No. 61, August 15, 1933, and a portion of the amendment is as follows: "No ad valorem tax shall be levied for State purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this State be used for State purposes; * * *." Okl.St. Ann.Const. art. 10, § 9.

The plaintiff's theory is that the tax collected was a tax levied and collected on an ad valorem basis and therefore is in direct conflict with the constitutional provision which denies the state the right to collect a state tax on an ad valorem basis.

It furthermore contends that if it is a tax based upon earnings while said cars are engaged in interstate commerce, it constitutes a burden on interstate commerce and is therefore void.

But the issue is greatly narrowed by a very frank statement by counsel in the defendants' brief. "We shall not contend that the Act in question in this case levies a gross income tax on the income derived by plaintiff from the use of its cars by railway companies, nor shall we contend that the Act in question levies a gross receipts tax on the gross receipts derived by plaintiff from the use of its cars. We concede that if the Act be construed, or could be construed, as levying a direct tax against the gross receipts received by plaintiff from the use of such cars, the Act would be unconstitutional as applied to the allegations of the pleading in this case, in that it would amount to a direct burden on interstate commerce. The question then involved in this case is, 'Does the act levy an ad valorem tax against the cars of plaintiff?'"

The Act hereinbefore quoted provides that all freight cars owned, operated, rented, leased or used by any freight line company wholly or partially within this state are classified for the purposes of taxation, "and a tax equivalent to four per centum (4%) of the gross earnings in this State is hereby levied on such freight cars; and such tax shall be in lieu of ad valorem taxes upon such freight cars, but nothing in this Act shall be construed to exempt from ad valorem taxation any real or personal property other than freight cars, or any freight cars which are not operated over the line of any common carrier railroad, as hereinbefore defined, upon which the gross earnings tax herein levied does not apply. * * *

"The Oklahoma Tax Commission, upon its own initiative, may, and upon the complaint of any person who claims he is taxed too great a rate hereunder, shall take testimony to determine whether the taxes herein imposed are greater, or less than the general ad valorem tax for all purposes would be on such freight cars, if taxed on an ad valorem basis. The said Commission shall have the power and it

shall be its duty to raise or lower the rate herein imposed to conform thereto."

And in the next paragraph, the Act provides that the express intention of the Legislature was that the tax raised from four per centum of the gross earnings be, "as nearly as practicable, the equal of the amount of tax such freight line companies, equipment companies and mercantile companies would pay if their cars were taxed on an ad valorem basis."

Defendants contend very vigorously that, while this is not a tax imposed upon the gross earnings nor the gross receipts while in use in interstate commerce, it in fact constitutes a property tax largely in the nature and character of what is known in Oklahoma as the gross production tax.

It must be kept in mind that the plaintiff is not operating in Oklahoma; that in California or New York it leased its refrigerator cars to the various railroad companies and these cars then became, so far as the control and operation are concerned, the property of the railway companies. The cars were brought into Oklahoma by the railway companies. The plaintiff would be in the same position as if it had leased any other character of personal property and that property were brought temporarily into the state of Oklahoma.

▆▆ It is admitted that the tax cannot be upheld as an income tax because the plaintiff is not a citizen or resident of the state of Oklahoma. It could not be considered as tax on the gross earnings or gross receipts, nor could it be considered as a franchise tax or an excise tax but it must be considered either as an ad valorem tax or a specific property tax arrived at from a different basis than from an ad valorem basis.

In Large Oil Co. v. Howard, 63 Okl. 143, 163 P. 537, 548, the Supreme Court of Oklahoma, in discussing the gross production tax, said: "While the tax is based on the gross value of the production, and is therefore, in a sense, an ad valorem tax, as distinguished from a specific tax, it is not, however, a tax levied on an ad valorem basis within the meaning, and subject to the limitations of section 9, art. 10, of the Constitution [Okl.St.Ann.]. The act imposes a special tax in lieu of and as a substitute for the general ad valorem tax on the oil and gas and the property of the producer used in the production thereof, and is levied by the Legislature in the exercise of its constitutional power to select property for the purposes of taxation, and to value and classify such property by means and methods differing from that commonly employed in the assessment, levy, and collection of taxes by counties and other municipal authorities."

In Cudahy Packing Co. v. State of Minnesota, 246 U.S. 450, 38 S.Ct. 373, 62 L.Ed. 827, the court held, with reference to a tax on a freight car line under the laws of Minnesota: "That the tax was a property tax, not a tax on gross earnings burdening interstate commerce, and was not distinguishable from the tax sustained in United States Express Co. v. Minnesota, 223 U.S. 335 [32 S.Ct. 211, 56 L.Ed. 459]."

After discussing the power and right of Minnesota to tax car lines engaged in interstate commerce, the court said: "This is not questioned; but it is insisted that the tax imposed is not a property tax but one laid directly on the gross earnings. Of course, if it is laid on the earnings as such, they being derived largely from interstate commerce, it is an unconstitutional restraint or burden on such commerce and void. * * * On the other hand, if what is done is to reach the property and not to tax the gross earnings, the latter being taken merely as an index or measure of the value of the former, it well may be that the objection urged against the tax is untenable; for, as this court has said, 'by whatever name the tax or taxes may be called that are fixed by reference to the value of the property, if they are not imposed because of its use in interstate or foreign commerce, and if they amount to no more than would be legitimate as an ordinary tax upon the property, valued with reference to the use in which it is employed, they are not open to attack' as restraining or burdening such commerce."

▆▆ In United States Express Company v. Minnesota, 223 U.S. 335, 32 S.Ct. 211, 56 L.Ed. 459, the court held: "A State may not burden interstate commerce by taxing its commerce, but it may measure the value of property of a corporation engaged in interstate commerce within the State by the gross receipts, and impose a tax thereon if the same is in lieu of all taxes upon the property of such corporation."

▆▆ In Pullman Company v. Richardson, 261 U.S. 330, 338, 43 S.Ct. 366, 368, 67 L.Ed. 682, with reference to the right to tax gross receipts or gross income from

property used in interstate commerce, the court said:

"A state can neither tax the act of engaging in interstate commerce nor lay a tax on gross receipts therefrom. In either case the tax would be a restraint or burden on such commerce and its imposition and invasion of the power of regulation confided to Congress by the commerce clause of the Constitution. * * *

"The rule is otherwise with property used in interstate commerce. A state within whose limits such property is permanently located or commonly used may tax it. * * * And, if the property be part of a system and have an augmented value by reason of a connected operation of the whole, it may be taxed according to its value as part of the system, although the other parts be outside the state; in other words, the tax may be made to cover the enhanced value which comes to the property in the state through its organic relation to the system. * * *

"In taxing property so situated and used, a state may select and employ any appropriate means of reaching its actual or full value as part of a going concern —such as treating the gross receipts from its use in both intrastate and interstate commerce as an index or measure of its value—and if the means do not involve any discrimination against interstate commerce and the tax amounts to no more than what would be legitimate as an ordinary tax upon the property, valued with reference to its use, the tax is not open to attack as restraining or burdening such commerce."

An ad valorem tax has a definite meaning.

"By far the larger proportion of all state taxation is also upon property by a valuation, and effect can only be given to it by means of assessors who value the property and apportion the tax by their estimate." Cooley on Taxation, 2d Ed., page 238.

"Ad valorem. (Latin.) According to the valuation. Duties may be specific or ad valorem. Ad valorem duties are always estimated at a certain per cent of the valuation of the property." 1 Bouv.Law Dictionary, Rawles Third Revision, page 133.

"Ad valorem. According to value. Duties are either ad valorem or specific—the former when the duty is laid in the form of a percentage of the value of the prop-erty; the latter where it is imposed as a fixed sum on each article or class, without regard to its value. The term 'ad valorem tax' is as well defined and fixed as any other used in political economy or legislation, and simply means a tax or duty upon the value of the article or thing subject to taxation." Black's Law Dictionary.

In Re Gross Production Tax of Wolverine Oil Company, 53 Okl. 24, 154 P. 362, L.R.A.1916F, 141, the court held that a gross production tax "is a tax on the business or occupation named therein, the amount of which is determined by the value of the gross production of petroleum and other commodities named."

This holding is not inconsistent with the decision of the court in Large Oil Company v. Howard, supra, which held that it was a special tax levied under Section 12, Article 10 of the Constitution, Okl.St. Ann., but that it was not an ad valorem tax.

In Re Protest of Bendelari, Gross Production Tax, 1919, 82 Okl. 97, 198 P. 606, 610, in which the Supreme Court of Oklahoma again considered the character of a gross production tax, the court said: "The paragraph further provides that the State Board of Equalization may lower or raise the rate to conform thereto. The force and effect of this provision of the law is to tax the property upon an ad valorem basis, and if the producer considers that the amount he pays in the way of a gross production tax at the rate provided for in said section is greater than his property would be if taxed to him upon an ad valorem basis, he may submit proof of this question to the State Board of Equalization, and the State Board of Equalization may reduce the rate, and thereby prevent him from being discriminated against. In other words, there shall be no discrimination in the taxation of this class of property from other classes of property that is taxed upon an ad valorem basis. It is conclusive that the intent of the Legislature was to make this tax a property tax, and *based upon the valuation of the property at the same rate as other property, and the same must be considered a property tax.* It is simply a method to arrive at a property tax, and in its final analysis it is nothing more nor less than a property tax." (Italics supplied.)

■ The Act under consideration merely takes the four per centum of the earnings as a basis for determining the value of the

cars actually in use in Oklahoma and regardless of what name it is called, it in fact is an ad valorem tax. The Act gives the Commission the power on its own initiative, to determine whether or not the four per centum tax would be higher or lower than an ad valorem tax, and to increase or lower the tax until it is equivalent to an ad valorem tax on the same property. If the Tax Commission utilizes the gross earnings as a basis on which to calculate or determine the actual value of the property, the assessment would nevertheless be upon an ad valorem basis. In other words, to say that the tax shall be four per centum of the gross earnings, provided the four per centum of the gross earnings is not higher or lower than the actual value of the property would be, determined from any other basis, is equivalent to saying that the tax is assessed upon an ad valorem basis, but for purposes of evading the Constitution it will be called a specific property tax.

The court, therefore, is of the opinion that this tax as assessed was an ad valorem tax. The constitutional amendment hereinbefore set out prohibits an ad valorem tax for state purposes. It is unfortunate that this is so.

The demurrer will be overruled. The defendants will be given twenty days in which to elect to stand on their demurrer or plead further. An exception is allowed.