# NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY *v.* STATE OF WISCONSIN.

ERROR TO THE SUPREME COURT OF THE STATE OF WISCONSIN.

No. 240.   Argued March 22, 1918.—Decided May 20, 1918.

The "license fee," laid by Wisconsin on domestic "level-premium" life insurance companies doing business in the State, of 3% of the gross income from all sources during the year, except rents from real estate and premiums collected outside Wisconsin on policies of non-residents, as construed by the Supreme Court of the State, is a commutation tax in lieu of all other taxes on the personal property of the companies taxable in Wisconsin.

Assuming, but not deciding, that the foreign investment business of such a company, involving shipments of securities, correspondence, etc., beyond the State, amounts to interstate commerce, such a tax casts no burden upon such commerce, where the gross receipts are in effect used as a fair measure of the value of the property and franchise taxable, but not otherwise taxed, within the State.

A tax on life insurance business is not a tax on interstate commerce.

It is not an arbitrary discrimination against domestic life insurance corporations, amounting to a denial of the equal protection of the laws, for a State to tax them by taking a percentage of their gross receipts, while exacting a fixed and comparatively slight fee from similar foreign corporations for the privilege of doing local business of the same kind. *Southern Ry. Co.* v. *Greene*, 216 U. S. 400, distinguished.

Neither is such arbitrary discrimination involved in imposing a license or privilege tax upon domestic old-line, level-premium companies, while exempting fraternal societies, having lodge organizations and insuring only the lives of their own members.

163 Wisconsin, 484, affirmed.

THE case is stated in the opinion.

*Mr. Harry L. Butler*, with whom *Mr. John M. Olin, Mr. Byron H. Stebbins* and *Mr. Ray M. Stroud* were on the briefs, for plaintiff in error.

*Mr. Walter Drew*, with whom *Mr. Spencer Haven*, Attorney General of the State of Wisconsin, was on the brief, for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This suit was brought to recover certain taxes or license fees paid by the Northwestern Mutual Life Insurance Company to the State of Wisconsin; the same were paid under protest, and this action was to recover $482,193.23 paid in 1912, and $505,643.22 in 1913. The case was decided in the Supreme Court of Wisconsin, upon demurrer to the original and amended complaints, and judgment was rendered in favor of the State. 163 Wisconsin, 484.

The taxes in question were collected under the statutes of Wisconsin. (§ 1220, Wis. Stats. of 1911, being § 51.32 of the later Stats.; § 1221, now § 51.33, being the so-called retaliatory law; § 1222, subsec. 5 of § 1947, and § 1948.)

The substance of the statute immediately involved is thus stated by the plaintiff in error:

"'Every company . . . transacting the business of life insurance within this state,' (excepting only such fraternal societies as have lodge organizations and insure only the lives of their own members) shall annually, on or before March 1, pay 'in lieu of all taxes for any purpose authorized by the laws of this state' (except taxes on real estate), certain prescribed license fees 'for transacting such business.'"

It appears that fraternal societies with lodge organizations insuring only the lives of their own members are not subject to this tax, and foreign level premium companies, similar to the plaintiff in error, are subject to an annual tax of but $300.00 liable to increase under the so-called retaliatory law according as other States impose like taxes on similar companies of Wisconsin. Assessment and stipulated premium companies, domestic and foreign, are taxed $300.00, or as to foreign companies such larger amounts as may be imposed under the retaliatory law. The license when granted authorizes the company to transact business until the first of March of the ensuing year unless sooner revoked or forfeited.

The contentions of a federal nature, raised by the plaintiff in error, are that this license tax imposes an unlawful burden upon interstate commerce in contravention of § 8, Article 1 of the Federal Constitution; that it violates the Fourteenth Amendment in denying the equal protection of the laws to the Northwestern Company by arbitrarily discriminating against it and in favor of foreign insurance companies, and between it and fraternal associations, both domestic and foreign; that it violates the Fourteenth Amendment in imposing an arbitrary, discriminatory, and confiscatory burden upon the Northwestern Company.

As to the annual license fee, it is made up as follows:

"Domestic companies. (1) If such company, corporation or association is organized under the laws of this

state, and is not purely an assessment or stipulated premium plan company under chapter 270, laws of 1899 (sec. 1955—1), three per centum of its gross income from all sources for the year ending December thirty-first, next prior to said first day of March, excepting therefrom income from rents of real estate upon which said company, corporation or association has paid the taxes assessed thereon, and excepting also premiums collected outside of the state of Wisconsin on policies held by nonresidents of the state of Wisconsin. In ascertaining the income upon which such license fee shall be computed as aforesaid, no deduction shall be made from premiums, whether paid in cash or premium notes, on account of dividends allowed or paid to the insured." [Wis. Stats. 1913, § 51.32.]

The statute also provides that such license fee shall be in lieu of all taxes for any purpose authorized by the laws of the State except taxes on real estate. The Northwestern Company was thus obliged to pay 3% of its gross income less income from rents of real estate, and less premium receipts from outside of the State.

Before entering upon a consideration of the errors assigned the nature and effect of this system of taxation must be borne in mind. The Northwestern Mutual Life Insurance Company is a corporation of the State of Wisconsin, having large reserves in that State, having a taxable situs therein. Of this statute the Supreme Court of Wisconsin said:

"It covers all the contributions which the state demands from the company or its business except real-estate taxes, which are relatively small in amount. It is common knowledge that all of the great level-premium insurance companies of the present day have vast reserve funds, to protect their liabilities on policies, running up into the hundreds of millions of dollars, and that these reserves are invested in interest-bearing securities, of

which real-estate loans secured by mortgage generally form the largest part. In the complaint in the present case it appears that on December 31, 1911, the plaintiff had outstanding loans secured by real-estate mortgages amounting to $153,562,654.39, of which only $5,654,369.10 covered real estate in Wisconsin. It also appears that the plaintiff's income from real-estate mortgages for the year ending on said last named date amounted to $7,446,393.10 and its income from bonds to $3,172,489.58. These securities are all credits, i. e., personal property of an intangible character, the situs of which for the purposes of taxation is in this state at the residence of the corporation."

And in the opinion on the filing of the amended complaint, added:

"In this connection it is argued that if a personal property tax had been levied on the plaintiff's reserve, consisting of securities and credits, there would have been deducted from the amount thereof, under the existing policy of the state with regard to the taxation of such property, its liabilities to policyholders, i. e., the present value of its outstanding policies valued as required by law, which is about ninety per cent. of the reserve. It is also argued that if the plaintiff had been subjected to income taxation under the state law it would have paid much less than under the three per cent. license fee requirement.

"We do not regard either contention as well founded. Our statutes governing the taxation of securities and credits for many years provided that there should be exempted from taxation so much thereof as 'shall equal the amount of bona fide and unconditional debts by him owing.' This provision was repealed by the Income Tax Law, which marked the abandonment of the attempt to levy personal property taxes upon that species of property. Ch. 658, Laws 1911.

"It seems entirely clear that the liability to policy-

holders which the plaintiff refers to is not in any sense an 'unconditional debt,' and as the policy of the state has never extended the exemption to any liability short of an unconditional debt we are unable to see any sound basis for the argument made.

. "As to the contention that if the plaintiff were taxed under the income tax system its burden would be far less than under the present license system, we shall not attempt to go into the arguments and figures presented in detail. It is sufficient to say that we do not think it appears from the allegations of the amended complaint that the plaintiff now pays substantially greater sums than it would pay under either the income taxation system or the former personal property taxation system.

"At all events there does not affirmatively appear to be any such disparity as would condemn the law as arbitrarily discriminatory."

While these views of the nature and effect of the law are not conclusive upon us, they are accepted unless they appear to be ill-founded, and we find no reason to reject them. The tax in question is, therefore, not only one for the privilege of doing life insurance business within the State, but is in effect a commutation tax, levied by the State in place of all other taxation upon the personal property of the company in the State of Wisconsin.

It is insisted that because of the foreign investment business of the company, large in amount, and involving shipments of securities, correspondence, etc., beyond the State, this law burdens interstate commerce. We need not reiterate the reasoning upon which this court has repeatedly held that a State may not by its system of taxation impose burdens upon interstate commerce, the cases have been recently reviewed and the doctrine reaffirmed. *Looney* v. *Crane Co.,* 245 U. S. 178; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135; *Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147.

The construction of the act by the state court brings the case within the decisions of this court in *U. S. Express Co.* v. *Minnesota*, 223 U. S. 335; *Cudahy Packing Co.* v. *Minnesota*, 246 U. S. 450. In the former case a commutation tax upon gross receipts of the express company from state and interstate business was sustained as casting no burden upon interstate commerce. In the *Cudahy Packing Co. Case* a tax of like character was held not a burden upon interstate commerce, although much of the gross receipts, which measured the property tax, was derived from such commerce. In both of these cases, following the previous decisions of this court, the tax was held to be within the authority of the State, and the inclusion in the measure of taxation of the receipts partly derived from interstate commerce was held not to invalidate the tax, its amount not being in excess of what would be legitimate as an ordinary tax on the property taken at its value.

We have said thus much as to the alleged invalidity of this license tax as a burden upon interstate commerce, without deciding, as we do not find it necessary to decide, whether the so-called foreign investment business of the company does or does not of itself amount to interstate commerce. If it amounts to commerce of that character no burden is cast upon it by such tax as is here involved, since the gross receipts coming from that character of business are used only as a measure of the value of the property and franchise lawfully taxable in the State.

That the tax upon the life insurance business, which is the subject-matter of the license tax here involved, is not a tax upon interstate commerce is established by a reference to the recent full consideration of the subject by this court. *New York Life Insurance Co.* v. *Deer Lodge County*, 231 U. S. 495.

This brings us to the question whether the statute denies to the company the equal protection of the laws. That

the State is not because of the Fourteenth Amendment
required to tax all property alike, and may classify the
subjects selected for taxation, is too well established to
require citation of the many cases in this court which
have so held.  The classification may not be arbitrary and
must rest upon real differences—subject to these quali-
fications the State has a wide discretion.  In this connec-
tion the Northwestern Company contends that the tax
upon it is so different from that imposed upon foreign
level-premium companies doing a like business within the
State that an arbitrary discrimination, amounting to a
denial of equal protection, is exercised as against it and
in favor of the foreign company.  As we have already
said, the foreign companies of like character pay a privi-
lege or occupation tax in the sum of $300.00 per annum.
The state court held, and we think properly so, that for-
eign insurance companies occupy a relation to the State
which is different from that of a domestic company.  The
latter has within the borders and taxing jurisdiction of
the State a large amount of personal property, receiving
protection, and subject to taxation.  The foreign company
has its reserves in the State of its domicile, and there sub-
ject to local taxation, which is of itself a substantial
difference.  Moreover, we have held that it is no denial
of equal protection for a State to impose a different rate
upon one of its own corporations than that imposed upon
a foreign corporation, for the privilege of doing business
within its borders.  *Kansas City, Memphis & Birming-
ham R. R. Co.* v. *Stiles,* 242 U. S. 111, 118.  In the case
of *Cheney Brothers Co.* v. *Massachusetts, supra,* this court
said:

"  .  .  .  a State does not surrender or abridge its
power to change and revise its taxing system and tax
rates by merely licensing or permitting a foreign corpo-
ration to engage in local business and acquire property
within its limits, and, second, that 'a State may impose a

different rate of taxation upon a foreign corporation for the privilege of doing business within the State than it applies to its own corporations upon the franchise which the State grants in creating them.' *Kansas City, Memphis & Birmingham R. R. Co.* v. *Stiles,* 242 U. S. 111, 118."

But, it is said that these decisions are opposed to the decision of this court in *Southern Ry. Co.* v. *Greene,* 216 U. S. 400. In that case the railway corporation of another State came into the State of Alabama in compliance with its laws, paid the license and property tax imposed upon other corporations doing business within the State, under sanction of the laws of the State acquired a large amount of railroad property therein, when it was attempted to subject it to a further tax for the privilege of doing business as a foreign corporation, which tax was not imposed upon domestic corporations doing the same kind of business in the same manner, and it was held that such classification was arbitrary and void under the Fourteenth Amendment. In that case we laid stress upon the fact that the tax related to railroad property not susceptible of other uses, which placed in the State had to remain there permanently, and could not be withdrawn at the pleasure of its owners. Under such circumstances, and dealing with that character of property, we held that the particular tax constituted such discrimination as to deny to the company the equal protection of the laws. That case was distinguished in the decision in *Kansas City, Memphis & Birmingham R. R. Co.* v. *Stiles, supra,* and also in disposing of the case of the White Company involved in *Cheney Brothers Co.* v. *Massachusetts, supra.* The difference between the *Southern Ry. Co. Case* and the one under consideration is quite obvious.

As to the alleged discrimination between old-line level-premium companies and beneficial associations, which are exempted from taxation under this statute, we think the differences are plain. The fraternal and beneficial

features are wanting in organizations like that of the Northwestern Company. The ascertainment and collection of premiums and payments for insurance are upon wholly different plans. As to the alleged discrimination in favor of stipulated premium companies and assessment companies, the plaintiff in error in its brief says that no domestic company of these classes and but one foreign company existed in Wisconsin in 1912, and that as to this its argument as to discrimination in favor of foreign level-premium companies applies. What we have already said disposes of that contention. We find no reason to disagree with the Supreme Court of Wisconsin in the conclusion that differences upon which classification rests in this statute are not fanciful, but real and substantial, and that the dissimilarities in treatment fall short of that arbitrary classification which amounts to a denial of the equal protection of the laws.

We find no error in the judgment of the Supreme Court of Wisconsin.

*Affirmed.*

MR. JUSTICE CLARKE took no part in the consideration or decision of this case.