NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Appellant, vs. THE STATE, Respondent.

*December 10, 1925—February 9, 1926.*

*Constitutional law: Occupation or privilege tax on insurance companies: Gross income as base: Income from tax-exempt federal securities: Validity of tax on gross income including income on United States bonds: Decisions of the supreme court of the United States: Binding force on state courts.*

1. It must be assumed that the legislature, in the enactment of a privilege or occupation tax on domestic insurance companies, intended to act within its lawful powers, and if it had power to include income from federal tax-exempt securities as part of the base upon which the tax should be reckoned, it should be held that it did so. p. 107.

2. While there is an analogy between a tax imposing a burden upon interstate commerce and a tax upon instrumentalities of the federal government, there is a distinction in that there is of necessity a certain amount of interference where the state and nation are operating in the same field, as in the regulation of commerce, whereas the rule as to instrumentalities is absolute in form and stricter in substance. p. 109.

3. The distinction drawn by the supreme court of the United
States as to the difference between a tax levied upon gross
receipts and net earnings must be followed by the state court;
but the first named court has held (*Flint v. Stone Tracy Co.*
220 U. S. 107) that a tax such as the one involved here does
no violence to the rule laid down in such cases as *Galveston,
H. & S. A. R. Co. v. Texas,* 210 U. S. 217.    p. 113.

4. Sec. 76.34, Stats., as construed by this court (*Northwestern
Mut. L. Ins. Co. v. State,* 163 Wis. 484) and by the supreme
court of the United States (*Northwestern Mut. L. Ins. Co.
v. Wisconsin,* 247 U. S. 132), when applied to the gross in-
come of a domestic corporation, including the income from
tax-exempt federal securities, does not tax or burden an in-
strumentality of the United States government.    p. 113.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge.    *Affirmed.*

This is an action brought under sec. 76.37, Stats. 1923,
to recover $236,515.14 with interest, being the amount of
taxes paid under protest by the plaintiff on January 10,
1924.    The complaint was demurred to on the ground that
it did not state facts sufficient to constitute a cause of action.
The demurrer was overruled with leave to amend.    The
plaintiff stood upon its complaint and thereupon judgment
of dismissal was entered, from which the plaintiff appeals.

For the appellant there was a brief by *George Lines* and
*Sam T. Swansen,* both of Milwaukee, and oral argument by
*Mr. Swansen.*

For the respondent there was a brief by the *Attorney
General* and *C. A. Erikson,* deputy attorney general, and
oral argument by *Mr. Erikson.*

ROSENBERRY, J.    The tax was imposed under the provi-
sions of sec. 76.34, Stats. 1923:

"*Life insurance companies to pay annual license.*    Every
company, corporation or association transacting the business
of life insurance within this state, excepting only such fra-
ternal societies as have lodge organizations and insure the
lives of their own members, and no others, shall, on or be-

fore the first day of March, in each year, pay into the state treasury as an annual license fee for transacting such business the amounts following:

"(1) *Domestic companies; three per cent. of gross income.* If such company, corporation or association is organized under the laws of this state, three per centum of its gross income from all sources for the year ending December thirty-first, next prior to said first day of March excepting therefrom income from rents of real estate upon which said company, corporation or association has paid the taxes assessed thereon, and excepting also premiums collected on policies of insurance and contracts for annuities.

"(2) *Foreign companies.* . . .

"(3) *Power granted by license; license fee in lieu of other taxes.* Such license, when granted shall authorize the company, corporation or association to whom it is issued to transact business until the first day of March of the ensuing year, unless sooner revoked or forfeited. The payment of such license fee shall be in lieu of all taxes for any purpose authorized by the laws of this state, except taxes on such real estate as may be owned by such company, corporation or association."

In reporting its taxable income under the provisions of this law, the plaintiff withheld therefrom sums derived from interest on United States bonds. Although the amount of interest received from such sources was disclosed it was not included in the taxable income, on the theory that the income derived from securities issued by the United States was entirely free from tax. The State apparently concurred in this view for a time, but in October, 1923, the commissioner of insurance made written demand upon the plaintiff to pay forthwith into the state treasury additional taxes on license fees for the license years 1919 to 1923, inclusive, equal to three per cent. of gross interest received during the years 1918 to 1922, inclusive, from the federal tax-free bonds described in the complaint, with interest at six per cent. from March 1st of the year when the tax or fee should have been paid according to the demand. In January, 1924, the com-

missioner repeated said demand and threatened that unless paid he would cancel and revoke plaintiff's license to transact business in the state. In order to protect its rights to do business, plaintiff was in this way compelled to pay and did pay under protest on January 10, 1924, as additional taxes or license fees for each of said license years, three per cent. of the gross amount of interest received by it upon the bonds described in the complaint, amounting to $208,468.80, with interest amounting to $28,046.34; total, $236,515.14. This sum was immediately deposited in the state treasury and the treasurer issued and delivered his official receipt therefor.

It is the contention of the plaintiff that the laws of the United States exempt all United States securities described in the complaint from taxation by or under state authority and that Liberty and Victory loan bonds were expressly exempt, "both as to principal and interest, now or hereafter imposed by the United States, any state, or any of the possessions of the United States, or by any local taxing authority, except (a) estate or inheritance taxes, (b) graduated additional income taxes, commonly known as surtaxes, and excess profits and war profits taxes, now or hereafter imposed by the United States, upon the income or profits of individuals, partnerships, associations, or corporations." 40 U. S. Stats. at Large, 291, ch. 56.

It is further contended that this act of compulsion asserted by the commissioner under the provisions of sec. 76.34, Stats. Wis., was unlawful and did great damage to the plaintiff and operated to impose a direct burden upon and interference with the right of Congress to borrow money upon the credit of the United States as authorized by art. I, sec. 8 [2] and [18], of the United States constitution; that it was also in violation of the laws of the United States wherein and whereby it was provided that the bonds described should be exempt from the tax so imposed and collected. It is also contended that the act of the commis-

sioner deprived the plaintiff of property without due process of law and denied to it equal protection of the laws, contrary to the Fourteenth amendment of the constitution of the United States. The complaint contained a prayer for the recovery of the amount paid under protest with interest from January 10, 1924, with costs.

The trial court held that the payment which the plaintiff was required to make by virtue of the provisions of sec. 76.34 is a privilege or occupation tax and is an annual license fee paid by the company for the privilege of transacting its business in Wisconsin (*Northwestern Mut. L. Ins. Co. v. State*, 163 Wis. 484, 155 N. W. 609, 158 N. W. 328); that no tax is levied upon securities exempt from taxation; that the income of the plaintiff from its investments is used only as a measure of the value of the property and franchise lawfully taxable in the state (*Northwestern Mut. L. Ins. Co. v. Wisconsin*, 247 U. S. 132, 38 Sup. Ct. 444), and further held that a license fee or tax paid for the privilege of doing business is not a tax upon the property; that the law imposes no burden upon tax-exempt securities, but simply uses the income from these securities as a means of measuring the amount of the license fee or privilege tax which plaintiff should pay for the privilege of conducting its business as a life insurance company, citing *Flint v. Stone Tracy Co.* 220 U. S. 107, 31 Sup. Ct. 342.

The trial court was further of the opinion that the fact that the fee exacted from the plaintiff was in lieu of all other state taxes except taxes upon real estate did not change the nature of the contribution which the plaintiff was required to make to the State.

It is contended on behalf of the State that the language of the act is so clear and explicit that it admits of no construction. It must be presumed that the legislature intended to act within the field of its lawful powers. If it had power to include income from federal tax-exempt securities as part

of the base upon which the tax should be reckoned, it should be held that it did so; on the other hand, if it had no such power we should hold that it did not do so.

"Indeed, where two governments, like those of the United States and the commonwealth, exercise their authority within the same territory and over the same citizens, the legislation of that which, as to certain subjects, is subordinate should be construed with reference to the powers and authority of the superior government and not be deemed as invading them, unless such construction is absolutely demanded. It should be held that such legislation was intended to apply so far as it was within its sphere, and such construction should be given to it." *Comm. v. Gagne,* 153 Mass. 205, 26 N. E. 449, 10 L. R. A. 442. See, also, *Neff v. Industrial Comm.* 166 Wis. 126, 164 N. W. 845; *Machae v. Fellenz C. & D. Co.* 183 Wis. 44, 197 N. W. 198; *Ratterman v. W. U. Tel. Co.* 127 U. S. 411, 8 Sup. Ct. 1127.

The first question for consideration therefore is, Does the statute as construed by the decision of this court and by the decision of the United States supreme court above referred to, when applied to gross income of the plaintiff, including the income derived by it from its tax-exempt federal securities, tax or burden an instrumentality of the United States government, which it is beyond the power of the State to impose? *McCulloch v. Maryland,* 4 Wheat. 316.

In *Northwestern Mut. L. Ins. Co. v. Wisconsin,* 247 U. S. 132, 38 Sup. Ct. 444, it was held:

"The construction of the act by the state court brings the case within the decisions of this court in *U. S. Exp. Co. v. Minnesota,* 223 U. S. 335, 32 Sup. Ct. 211; *Cudahy Packing Co. v. Minnesota,* 246 U. S. 450, 38 Sup. Ct. 373. In the former case a commutation tax upon gross receipts of the express company from state and interstate business was sustained as casting no burden upon interstate commerce. In the *Cudahy Packing Co. Case* a tax of like character was held not a burden upon interstate commerce, although much of the gross receipts, which measured the property tax, was derived from such commerce. In both of these cases, fol-

lowing the previous decisions of this court, the tax was held to be within the authority of the state, and the inclusion in the measure of taxation of the receipts partly derived from interstate commerce was held not to invalidate the tax, its amount not being in excess of what would be legitimate as an ordinary tax on the property taken at its value.

"We have said thus much as to the alleged invalidity of this license tax as a burden upon interstate commerce, without deciding, as we do not find it necessary to decide, whether the so-called foreign investment business of the company does or does not, of itself, amount to interstate commerce. *If it amounts to commerce of that character no burden is cast upon it by such tax as is here involved, since the gross receipts coming from that character of business are used only as a measure of the value of the property and franchise lawfully taxable in the state."* (Italics ours.)

While there is an analogy between a tax which imposes a burden upon interstate commerce and a tax which taxes or imposes a burden upon instrumentalities of the federal government, there is a distinction which was pointed out in *Gillespie v. Oklahoma,* 257 U. S. 501, 42 Sup. Ct. 171. It was there said in effect that where two sovereignties are operating in the same field, as in the regulation of commerce, there is of necessity a certain amount of interference which cannot by any possibility be avoided if the states are to exist and to make laws, whereas "the rule as to instrumentalities of the United States, on the other hand, is absolute in form and at least stricter in substance." With this rule in mind we proceed to a consideration of whether or not the statute imposes a burden upon the instrumentalities of the United States government or in any way impairs or impedes its power to issue securities exempt from taxation.

We had for many years in the state of Wisconsin a law imposing upon railway and other public utility companies a license fee based upon gross earnings, including earnings in interstate commerce. See *State v. Railway Cos.* 128 Wis. 449, 108 N. W. 594. While the validity of this statute was

never contested in the courts of the United States, similar statutes were under consideration in a case known as *State Tax on Railway Gross Receipts*, 15 Wall. 284. It was there said:

"It is not to be questioned that the states may tax the franchises of companies created by them, and that the tax may be proportioned either to the value of a franchise granted, or to the extent of its exercise; nor is it deniable that gross receipts may be a measure of proximate value, or, if not, at least of the extent of enjoyment. If the tax be, in fact, laid upon the companies, adopting such a measure imposes no greater burden upon any freight or business from which the receipts come than would an equal tax laid upon a direct valuation of the franchise. In both cases, the necessity of higher charges to meet the exaction is the same."

We see no difference between the law basing the license fee of railway companies upon gross earnings, including earnings in interstate commerce, and the statute under consideration, where a similar license fee is measured by gross receipts, including those derived from tax-exempt federal securities.

The United States supreme court having held in *Northwestern Mut. L. Ins. Co. v. Wisconsin, supra,* that this tax is within the rule laid down in *U. S. Exp. Co. v. Minnesota,* 223 U. S. 335, 38 Sup. Ct. 373, it becomes material for us to inquire as to the nature of the tax sustained in that case. The court said, speaking of the tax levied by the state of Minnesota:

"The tax in the present case is not like those held invalid in the *Galveston Case* (210 U. S. 217, 28 Sup. Ct. 638) and the *Oklahoma Case* (223 U. S. 298, 32 Sup. Ct. 218), being in addition to other state taxation reaching the property of all kinds of the express company. The tax to be collected in part from the earnings of interstate commerce was part of a scheme of taxation seeking to reach the value of the property of such companies in the state, measured by the receipts from business done within the state. The statute was not

aimed exclusively at the avails of interstate commerce (*Philadelphia & S. S. Co. v. Pennsylvania*, 122 U. S. 326, 7 Sup. Ct. 1118), but, as in the *Maine Case* (142 U. S. 217, 12 Sup. Ct. 121), was an attempt to measure the amount of tax within the admitted power of the state by income derived, in part, from the conduct of interstate commerce. . . .

"Upon the whole, we think the statute falls within that class where there has been an exercise in good faith of a legitimate taxing power, the measure of which taxation is in part the proceeds of interstate commerce, which could not, in itself, be taxed, and does not fall within that class of statutes uniformly condemned in this court, which show a manifest attempt to burden the conduct of interstate commerce, such power, of course, being beyond the authority of the state."

While the supreme court of the United States was there speaking of a burden cast upon interstate commerce, we see no reason why the reasoning of the court in that case does not apply in the instant case. But in a previous case where the situation was reversed and the court had under consideration the power to measure a tax levied by the United States government by the amount of income derived from tax-exempt securities issued by states and municipalities, the court said:

"Nor does the adoption of this measure of the amount of the tax do violence to the rule laid down in *Galveston, H. & S. A. R. Co. v. Texas*, 210 U. S. 217, 28 Sup. Ct. 638, nor *W. U. Tel. Co. v. Kansas*, 216 U. S. 1, 30 Sup. Ct. 190. . . .

"There is nothing in these cases contrary, as we shall have occasion to see, to the former rulings of this court which hold that where a tax is lawfully imposed upon the exercise of privileges within the taxing power of the state or nation, the measure of such tax may be the income from the property of the corporation, although a part of such income is derived from property in itself non-taxable. The distinction lies between the attempt to tax the property as such and to measure a legitimate tax upon the privileges involved in the use of such property. . . .

"It is therefore well settled by the decisions of this court that when the sovereign authority has exercised the right to tax a legitimate subject of taxation as an exercise of a franchise on privilege, it is no objection that the measure of taxation is found in the income produced in part from property which of itself considered is non-taxable. Applying that doctrine to this case, the measure of taxation being the income of the corporation from all sources, as that is but the measure of a privilege tax within the lawful authority of Congress to impose, it is no valid objection that this measure includes, in part at least, property which, as such, could not be directly taxed." *Flint v. Stone Tracy Co.* 220 U. S. 107, 163, 165, 31 Sup. Ct. 342.

It having been held that the amount paid by the plaintiff in this case is a tax lawfully imposed upon the exercise of privileges within the taxing power of the state of Wisconsin, the plaintiff being a Wisconsin corporation and it having been held that such a tax, being in lieu of all other taxes, may properly be measured by gross income although such income includes income derived from tax-exempt securities, it must be held that the tax was lawfully imposed.

Such was the conclusion reached by the court of appeals of the District of Columbia in *Security Sav. & Comm. Bank v. District of Columbia,* 279 Fed. 185. The plaintiff and appellant in that case was a savings bank, incorporated under the laws of West Virginia, doing business in the District of Columbia. Pursuant to an act of July 1, 1902, as amended, a tax was levied upon the gross earnings of the bank. These earnings included $16,517.33, interest derived from Liberty bonds, Victory bonds, War saving stamps, and certificates of indebtedness of the United States, which were by law exempt from taxation. The tax on the earnings derived from these securities was paid under protest, and the bank, claiming the tax was void, instituted an action for its recovery. The court held the tax in question valid. See, also, *In re Detroit & Windsor F. Co.* 232 Mich. 574, 205 N. W. 102.

The legislature having made the gross income of the plaintiff the base upon which the amount of the fee or tax should be reckoned, and it having been held that such a statute imposes no tax or burden upon tax-exempt instrumentalities of the federal government, it was within the power of the legislature. The act should be construed as applying to the gross income of the plaintiff, including that derived from tax-exempt federal securities. We should construe it otherwise if it were held that the inclusion of income from tax-exempt securities was beyond the lawful power of the legislature.

It is argued on behalf of plaintiff that in order to sustain the law the court must ignore the difference between a tax levied upon gross receipts and net earnings, a distinction which was pointed out in *U. S. Glue Co. v. Oak Creek*, 247. U. S. 321, 38 Sup. Ct. 499. See, also, *Alpha P. C. Co. v. Comm.* 268 U. S. 203, 45 Sup. Ct. 477. We have carefully considered and weighed the argument of plaintiff's counsel and recognize the force of the contention. The answer thereto is furnished by the supreme court of the United States in *Flint v. Stone Tracy Co.* 220 U. S. 107, 31 Sup. Ct. 342, where it held that a tax such as the one imposed by the statute in this case does no violence to the rule laid down in such cases as *Galveston, H. & S. A. R. Co. v. Texas,* 210 U. S. 217, 28 Sup. Ct. 638, which case also dealt with a tax levied on gross receipts. The United States supreme court having drawn the distinction, it is our duty to follow it.

We shall not attempt to reconcile all the conflicting *dicta* to be found in the decisions upon this vexed question. The statute. in question having been classified by the supreme court of the United States in the prior decision of *Northwestern Mut. L. Ins. Co. v. Wisconsin, supra,* as one which lawfully imposes a license or privilege tax, the amount of which is measured by the amount of the gross income, it falls clearly within the reasoning of *Flint v. Stone Tracy*

*Co., supra.* Unless these decisions are modified or overruled, we see no escape from the conclusion that the tax in question is valid.

*By the Court.*—Judgment affirmed.

For the appellant there was a brief by *George Lines* and *Sam T. Swansen,* both of Milwaukee, and oral argument by *Mr. Swansen.*

For the respondent there was a brief by the *Attorney General* and *C. A. Erikson,* deputy attorney general, and oral argument by *Mr. Erikson.*