## DISTRICT OF COLUMBIA v. RIGGS NAT. BANK.*

Court of Appeals of District of Columbia.

Submitted January 7, 1929. Decided February 4, 1929.

No. 4785.

W. W. Bride and F. H. Stephens, both of Washington, D. C., for appellant.

Frank J. Hogan and Wm. H. Donovan, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. The Riggs National Bank brought suit against the District of Columbia to recover taxes paid under duress and protest. Defendant filed a motion to dismiss, which was treated as a general demurrer and overruled by the trial justice, whereupon defendant elected to stand upon its demurrer, and judgment accordingly was entered for the plaintiff. From the judgment this appeal was prosecuted.

Paragraph 5 of the Act of Congress of July 1, 1902, 32 Stat. 619, provides in brief that each national bank in the District shall on or before August 1st of each year make return to the board of personal tax appraisers of the amount of its gross earnings for the preceding year ending the 30th day of June, and shall pay to the collector of taxes 6 per cent. per annum on such gross earnings. It also provides that in addition thereto the real estate owned by each national bank shall be taxed as other real estate in the District of Columbia. By an amendment of 1917 (39 Stat. 1047) it was provided that the tax levied on gross earnings should be in lieu of all other taxation upon the personal property of the bank.

It appears that, when plaintiff bank made its return for the year ending June 30, 1927, it showed gross earnings in the sum of $1,963,537, of which the sum of $309,573.90 was received as interest on United States government bonds and other evidences of public debt, which, by the terms of the laws under which they were issued, were made tax-exempt. The bank refused to pay the sum of $18,574.43, being 6 per cent. on the United States securities claimed to be exempt from taxation, and tendered to the collector the balance of the amount of tax claimed. The collector rejected the tender and threatened that at the proper time the penalty of 1 per cent. per month, as provided by law, would be imposed. Plaintiff thereupon paid the tax under protest, and brought this action

*Certiorari denied 49 S. Ct. 343, 73 L. Ed. ——.

for the recovery of the sum so claimed to be exempt.

This question was before this court in Security Savings & Commercial Bank v. District of Columbia, 51 App. D. C. 316, 279 F. 185, in which it was held that a tax levied under the act of 1902 upon the gross earnings of banks is a franchise and not a property tax, and that such tax was valid, though a portion of the gross earnings had been derived from interest on Liberty Bonds and other government securities exempt from taxation. The decision of this court was based on the decision of the Supreme Court in Northwestern Mutual Life Insurance Co. v. Wisconsin, 247 U. S. 132, 38 S. Ct. 444, 62 L. Ed. 1025, where the court held that the gross receipts, being in effect used as a measure of the value of the property and franchise taxable, but not otherwise taxed within the state, constituted a valid tax. But the decision in the Wisconsin case has been distinguished and somewhat modified in the later case of Northwestern Mutual Life Insurance Co. v. Wisconsin, 275 U. S. 136, 48 S. Ct. 55, 72 L. Ed. 202, where the court pointed out that the right of the state to include in gross income, as a basis of taxation, interest received on government bonds, was not in issue or called to the attention of the court in the former case.

The court in its opinion in the later case said: "It cannot be denied (and denial is not attempted) that bonds of the United States are beyond the taxing power of the states [citing cases]. Certainly since Gillespie v. Oklahoma, 257 U. S. 501, 505 [42 S. Ct. 171, 66 L. Ed. 338], it has been the settled doctrine here that, where the principal is absolutely immune, no valid tax can be laid upon income arising therefrom. To tax this would amount practically to laying a burden on the exempted principal. Accordingly, if the challenged act, whatever called, really imposes a direct charge upon interest derived from United States bonds, it is pro tanto void."

The controlling point in the decision of the court in this case is that a license, franchise, or privilege tax, measured by gross income, gross earnings, or gross receipts, which are partly derived from United States bonds, amounts to taxation on the bonds themselves, and it was for this reason that the court held that the state exceeded its power and that the tax was to that extent void. The District tax law is not different from the law of Wisconsin, as set out in the opinion of the court in the second Wisconsin case. There, as here, Wisconsin contended

that it was a privilege, franchise, or license tax. The Supreme Court, at page 139 (48 S. Ct. 56), referring to its decision in the former Wisconsin case, said: "Speaking there of this same statute we did declare: 'The tax in question is, therefore, not only one for the privilege of doing life insurance business within the state, but is in effect a commutation tax, levied by the state in place of all other taxation upon the personal property of the company in the state of Wisconsin.' But no question was then raised concerning taxation of income derived from United States bonds. The point now presented was not involved."

Counsel for the District seek to avoid the effect of the Wisconsin case on the theory that the tax there sought to be imposed was by an act of the state Legislature, inferring that, though it may be beyond the power of a state Legislature to tax government bonds, it is not beyond the power of Congress to provide for the taxation of such bonds within the District of Columbia. Section 1 of the "First Liberty Bond Act," approved April 24, 1917, 40 Stat. 35 (31 USCA § 746), contained the following provision with reference to the bond issue therein authorized: "The principal and interest thereof shall be payable in United States gold coin of the present standard of value and shall be exempt, both as to principal and interest, from all taxation, except estate or inheritance taxes, imposed by authority of the United States, or its possessions, or by any state or local taxing authority." All the acts of Congress providing for bond issues exempt the principal and interest from taxation in as sweeping language as that used in the above statute.

In a later case, National Life Insurance Co. v. United States, 277 U. S. 508, 48 S. Ct. 591, 72 L. Ed. 968, where it was attempted to indirectly subject the insurance company to taxation upon tax exempt Liberty Bonds and other federal obligations, the court, approving its opinion in the second Wisconsin case, said: "It is settled doctrine that directly to tax the income from securities amounts to taxation of the securities themselves." Evidently referring to the exemption provisions in the acts of Congress under which these government bonds and securities were issued, the court in this case said: "One may not be subjected to greater burdens upon his taxable property solely because he owns some that is free. No device or form of words can deprive him of the exemption for which he has lawfully contracted." The court, however, threw in the suggestion that "how far

the United States might repudiate their agreement not to tax we need not stop to consider." And we need not stop here to consider the contention made that Congress might repudiate the exemptions contained in the acts authorizing the issue of the bonds within the District of Columbia, since there is nothing in the language of either the Taxing Act or the acts under which the bonds were issued to indicate any such intention on the part of Congress.

If such an inference cannot be read into the taxing act, the fact remains that the bonding acts were passed long subsequent to the passage of the taxing act, and whatever exceptions or exemptions appear in the bonding acts must be construed to limit the taxing power under the earlier act. Considering the sweeping language of exemption used in the bonding acts, we find no difficulty in holding that they apply to the District of Columbia as well as all other portions of the United States, placing a limitation, not only upon the Legislatures of the states, but upon Congress, at least until it is attempted to be removed by that body. When that attempt is made, it will be time then to consider whether Congress itself may deprive the bondholder "of the exemption for which he has lawfully contracted."

The judgment is affirmed, with costs.