# Richmond

## FIREMAN'S MUTUAL AID ASSOCIATION OF THE CITY OF RICHMOND v. COMMONWEALTH OF VIRGINIA.

January 29, 1936.*

Present, All the Justices.

*Rehearing denied March 12, 1936.

The opinion states the case.

*Christian, Barton & Parker, Ashton Dovell* and *James E. Cannon,* for the plaintiff in error.

*Abram P. Staples, Attorney-General, W. W. Martin, Assistant Attorney-General,* and *R. Hugh Rudd,* for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

The question to be decided in this case is whether or not the intangible property, consisting of bonds, notes, etc., and money, in which the accumulated funds of the plaintiff in error are invested, is liable to taxation by the State.

The plaintiff in error, which we shall hereinafter call the defendant, was incorporated under the appropriate statutes in the year 1912. Its purposes, as set forth in an amendment to the original charter, are as follows:

"The purposes for which the corporation is formed are to provide an assessment upon its active members to accumulate a fund in order to provide by way of pension for the maintenance and support of those members of the fire and fire alarm departments of the city of Richmond, Virginia, who after honorable service in the said departments shall be retired therefrom by reason of sickness, old age, wounds and other infirmities. And the board of directors in their discretion may be authorized

to extend these benefits where found necessary to a widow of a deceased member, or if there be no widow then to the next of kin dependent upon him for support."

Its board of directors, who were to manage, conduct and control its affairs, were eleven in number, five of whom were to be elected from the life members of the association and four to be elected from the active members, and these with the chief engineer of the fire department of the city of Richmond and the secretary of such department, by virtue of their offices, constitute the said board.

Its membership was limited to those persons who were members of the fire and fire alarm departments of the city of Richmond and such membership was compulsory upon the part of the members of the fire and fire alarm departments of the city of Richmond. A prerequisite of such membership is the following pledge:

"(1) I pledge myself to pay into the treasury of the Fireman's Mutual Aid Association of the city of Richmond the sum of $10 per month for the first year of my service and $5 per month for the second and third years of my service.

"(2) I further pledge myself to pay into the treasury of the Fireman's Mutual Aid Association of the city of Richmond after my third year of service such sum per month as dues as shall be prescribed by the said Fireman's Mutual Aid Association of the city of Richmond."

It is thus seen that this corporation is clothed by charter authority with the power and means to effect its purposes and to conduct its operations, as in the case of any other corporation so organized and brought into existence.

Its charter afforded the means of its conduct and it became a legal entity for the effectuation of its purposes within itself without extrinsic aid of any sort.

This is said here because of the insistence of its attorneys that the corporation and its assets are owned directly or indirectly by the city of Richmond.

■ We can find no indicia of such ownership in the charter or in the record in this case.

For a number of years the intangible property of the defendant escaped taxation because the tax authorities, as is shown by the testimony of Tax Commissioner C. H. Morrissett, did not know of its existence and the defendant did not voluntarily list and report its intangible assets for the purpose of taxation. The validity of the assessments for the years 1930, 1931, 1932 and 1933 is involved in this case. Upon the declination of the defendant to pay the taxes for these years suit was instituted by the State for their recovery. The matter was submitted to the judge of the circuit court of the city of Richmond, without the intervention of a jury, for determination. The decision was in favor of the State. It held that the intangible property of the defendant is subject to taxation under sections 68, 69 and 70 of the Tax Code of Virginia (see Code 1930, Appendix, pages 2146, 2147), which are the appropriate sections relating to the taxation of intangible personal property.

As has been hereinbefore intimated, the defendant urges that the tax is invalid because it is directly or indirectly owned by the city of Richmond and therefore it is exempt from taxation under the provisions of paragraph (a) of section 183 of the Constitution of Virginia.

The section and paragraph referred to are as follows:

"§ 183. Property Exempt From Taxation.—Unless otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes:

"(a) Property owned directly or indirectly by the United States, the Commonwealth or any political subdivision thereof, * * *."

■ We do not think that this exemption provision of the Constitution has any application to the defendant. Neither the Commonwealth of Virginia nor the city of Richmond has any control, or, in fact, anything to do with the operation and direction of the interests or affairs of

the defendant. The mere fact that two of the officers of the fire department of the city were placed on the directorate is not a justification for the claim or defense that the city has any rights of ownership in the defendant.

As a further evidence that the framers of the Constitution intended that property such as that of the defendant should be taxed, we cite the following paragraph from section 183, above referred to:

"Nothing contained in this section shall be construed to exempt from taxation the property of any person, firm, association or corporation, who shall, expressly or impliedly, directly or indirectly, contract or promise to pay a sum of money or other benefit, on account of death, sickness or accident to any of its members or other person."

We are of the opinion that the contention of the defendant with respect to the application of the exemption clause of the Constitution, is untenable.

The defendant further contends that because the Commonwealth does not require a similar tax to be paid by fraternal benefit societies, requirement of the payment of this tax by defendant operates to deny to it the equal protection of the laws and thus offends the provisions of section 1 of the Fourteenth Amendment of the United States Constitution.

Fraternal benefit societies and their funds are exempted from taxation by section 4303 of the Code of Virginia, which is as follows:

"Every fraternal benefit society organized or licensed under this chapter is hereby declared to be a charitable and benevolent institution, and all of its funds shall be exempt from all and every State, county, district, municipal and school tax, other than taxes on real estate and office equipment."

Fraternal benefit societies are defined by section 4273 of the Code of Virginia, which is as follows:

"Any corporation, society, order or voluntary association, without capital stock, organized and carried on solely

for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which shall make provisions for the payment of benefits in accordance with section 4277, is hereby declared to be a fraternal benefit society."

The defendant has few, if any, of the requisites of a fraternal benefit society. It is in evidence that the defendant has no ritual, or lodge system and there is no initiation ceremony and that membership therein is compulsory upon all members of the fire and fire alarm departments of the city of Richmond. Under sections of chapter 171 of the Code (section 4273 et seq.), fraternal benefit societies must pay death benefits, and the conditions of membership are prescribed, investment of the funds are restricted, and they are subject to inspection by the bureau of insurance. In all of these particulars they differ from the defendant. So that the policy of the State in taxing the funds of the defendant and in exempting the funds of fraternal benefit societies from taxation is a consistent one, in that it deals with two separate and distinct subjects; the one having little or no relation to the other and therefore the burden borne by the one cannot be urged as denying to it equal protection of the laws.

It is urged that the separate classification of the defendant and fraternal benefit societies for taxation is unreasonable and arbitrary. We think this position is untenable, because, as we have said before, the subjects are entirely different. The legislature in exempting the funds of fraternal benefit societies from taxation may have been influenced by the fact that such societies generally pay small death and burial benefits; that they serve a large class of people who, as a rule, cannot afford more expensive and adequate protection; that an important element of the body politic known as the working class is generally impelled to their membership and that such organizations need the aegis of protection that the State can properly accord to them.

■ It has been held that exemptions which are accorded some classes and withheld from other different classes do not create an inequality in a constitutional sense. See *Hart Refineries* v. *Harmon,* 278 U. S. 499, 49 S. Ct. 188, 73 L. Ed. 475.

In the case of *Northwestern Life Insurance Co.* v. *Wisconsin,* 247 U. S. 132, 38 S. Ct. 444, 446, 62 L. Ed. 1025, the court said through Mr. Justice Day:

"As to the alleged discrimination between old line and level-premium companies and beneficial associations which are exempt from taxation under this statute, we think the differences are plain. The fraternal and beneficial features are wanting in organizations like that of the Northwestern Company. The ascertainment and collection of premiums and payments for insurance are upon wholly different plans."

■ In the case cited above the claim of arbitrary discrimination in favor of fraternal societies in the matter of taxation was brought into sharp review and the decision was to the effect that State legislatures have a very wide discretion in the making of classifications for tax purposes. See also, *Commonwealth of Pennsylvania* v. *Girard Life Insurance Co.,* 305 Pa. 558, 158 Atl. 262, 83 A. L. R. 460.

The case of *Hollywood Cemetery Co.* v. *Commonwealth,* 123 Va. 106, 96 S. E. 207, 208, is very enlightening to our inquiries here and its holdings are very apt and pertinent. Judge Prentis, later Chief Justice of this court, delivered the opinion from which we take the succeeding excerpts:

"When the words of Constitutions and of statutes are unambiguous and have a clear and definite meaning, indicating their purpose, it is well settled that courts are not permitted to interpret that which needs no interpretation, and that general rules for the construction of statutes of doubtful meaning have no application. If the intention is manifest from the language used and leads to no absurd conclusion, courts must give such provisions

the effect clearly intended. *Commonwealth* v. *Gaines*, 2 Va. Cas. (4 Va.) 172; *Price's Ex'r* v. *Harrison's Ex'r*, 31 Gratt. (72 Va.) [114] 117; *Johnson* v. *Mann*, 77 Va. 265; *Ryan* v. *Krise*, 89 Va. [728] 733, 17 S. E. 128; *London Bros.* v. *National Bank*, 121 Va. 460, 93 S. E. 699."

In this case it was urged that the State ought not to tax the fund of which itself was the beneficial owner. As to this contention the opinion proceeds:

"We find it impossible to agree with this contention. The contract shows that the company has absolute title to this fund of $8,000. It may use it in the discretion of those in control of the company for any purpose authorized by its charter. It may certainly spend the principal in improving its own property, or in purchasing other land for enlarging the cemetery, and the record shows that such enlargement is in contemplation. This fund is liable to the debts of the company, and the Commonwealth has no title whatever thereto. We cannot distinguish between the title of the company thereto and its title to any of its other accumulated funds. Hollywood Cemetery is a sacred spot to the people of Virginia. It holds the dust of many of its heroes. The State has always been generous in providing the company with funds when they were needed to enable it properly to care for the graves of the Confederate soldiers buried there. It is doubtless true that had the matter been called to the attention of the last constitutional convention, all of its personal property would have been exempted, just as that of the Confederate Memorial Literary Society was exempted by clause (f) of section 183 of the Constitution. This court, however, is not permitted to indulge either its sentiment or sympathy for the purpose of relieving the company from the burden which the Constitution has clearly imposed upon it as well as upon the other owners of property in the Commonwealth. The taxing officials were compelled, in the performance of their duty, to make the assessment complained of, and the question has been rightly determined by the trial court."

In the case of *Commonwealth of Pennsylvania* v. *Girard Life Insurance Co., supra,* the State of Pennsylvania imposed a tax on the gross premiums received by stock insurance companies and exempted from such tax imposition like funds of mutual companies. The court in deciding that this action was not unconstitutional declared that the differentiating principle determining the validity of classification for tax purposes is whether there is such a difference between the entity taxed and the one not taxed, with relation to the act in respect to which the classification is proposed, as justified the legislature in making the classification which it did, and that if such difference exists, the statutory provision is constitutional, and, if not, it is void. The court held that the classification of domestic life insurance companies into stock and mutual ones for the purpose of taxation, levying upon the gross premiums of the first and exempting those of the second, was a constitutional one. See also, *Manufacturers' Mut. F. Ins. Co.* v. *Clarke,* 41 R. I. 277, 103 Atl. 931; *Queen City F. Ins. Co.* v. *Basford,* 27 S. D. 164, 130 N. W. 44; *Richmond Linen Supply Co.* v. *Lynchburg,* 160 Va. 644, 169 S. E. 554.

The point is urged by the State that even if there were serious question as to the constitutionality of section 4303 of the Code, and we do not think there is, that the plaintiff in error would not be heard to raise the question because it does not belong to the class affected by the statute.

We think the State's position in this regard is sound.

It is said in the case of In re *Knowles' Estate,* cited in 145 A. 797, 800, 63 A. L. R. 1086:

"A court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, for only persons materially affected are entitled to raise constitutional questions and only those whose rights will be prejudiced by the enforcement of an unconstitutional act will be heard to question its validity."

Cooley on Constitutional Limitations (8th Ed.), vol. 1, page 339:

"Nor will a court listen to an objection made to the constitutionality of an act by a party whose rights it does not affect and has, therefore, no interest in defeating it."

The defendant cites the case of *Lehigh Portland Cement Co.* v. *Commonwealth,* 146 Va. 146, 135 S. E. 669, as authority for the position which it takes here.

We do not think it is in point for in that case the company's real estate was assessed for taxation upon a valuation of one hundred per cent and all other real estate in the magisterial district was valued at fifty-five per cent of its real value for the purposes of taxation. Manifestly the difference in the assessments in that case displayed a glaring inequality and in effect a perversion of the law.

It follows that in our opinion the judgment of the trial court was right except as to the assessment of the 1930 taxes on the intangibles of the defendant. The assessment for that year came too late. The provisions of section 418 of the Tax Code (see Code 1930, Appendix, page 2246, as amended by Acts 1932, page 417) did not permit the 1930 assessment. The assessment did not come within the period of time fixed by the statute and there appears nothing in the record to prevent the application of the time fixed by the statute to this case. The judgment of the trial court is affirmed except as to the 1930 tax, as to which the defendant is relieved.

*Affirmed in part; reversed in part.*