## Richmond

### CITIZENS' FOUNDATION OF THE RICHMOND PROFESSIONAL INSTITUTE, INC. v. CITY OF RICHMOND.

June 13, 1966.

Record No. 6196.

Present, Eggleston, C. J., and Spratley, Snead, I'Anson, Carrico and Gordon, JJ.

*Lewis T. Booker* (*Kenneth C. Patty, 1st Assistant Attorney General; Hunton, Williams, Gay, Powell and Gibson*, on brief), for the plaintiff in error.

*Jack N. Herod, Assistant City Attorney* (*J. Elliott Drinard, City Attorney*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

The city of Richmond filed a motion for judgment against the Citizens' Foundation of the Richmond Professional Institute, Inc. The motion alleged that the Foundation owned three parcels of land in the city upon which it had refused to pay real estate taxes for the years 1960, 1961, 1962 and 1963. Judgment was demanded against the Foundation for the amount of the taxes, plus penalties and interest.

The Foundation filed grounds of defense alleging that the property in question was exempt from taxation under the provisions of Section 183 of the Constitution of Virginia and the statutes enacted pursuant thereto.

The trial court heard the matter, without a jury, and ruled that the Foundation was liable for the taxes on the property. Final judgment was entered in favor of the city in the sum of $7,179.65. The Foundation was granted a writ of error.

The Foundation had its beginning in 1917, when a group of Richmond citizens organized to provide training for social workers and public health nurses. A charter was obtained from the State Corporation Commission for the purposes of establishing and operating "a school where students may obtain upon moderate terms, training in social work, economics, civics and sociology."

The organization has had seven names over the years, the last being adopted after the present action was instituted when the name RPI Foundation was chosen.

Although the stated purposes of the Foundation have been changed from time to time by charter amendments, it has operated throughout its existence as a non-stock, non-profit corporation. Beginning with donated funds of less than $2,000.00, the Foundation first held classes in an old building furnished by the city, lighted with gas and heated by wood-burning stoves. When these quarters proved inadequate, the school moved to facilities furnished by Monumental Episcopal Church. Later, quarters were rented in a building in downtown Richmond.

In 1920, the Foundation worked out an arrangement with the College of William and Mary, a state institution, whereby the latter college provided professors to conduct evening classes in Richmond so that school teachers might secure degrees. This arrangement continued until 1925, with the Foundation conducting annual fund-raising campaigns, as it had from the beginning. The proceeds of these campaigns, together with the tuition received from students, were used to operate the school.

In 1925, the Foundation concluded that it could no longer rely upon the fund-raising campaigns to support the school. Accordingly, an understanding was reached with the College of William and Mary whereby the latter agreed to take over operation of the school and it became known as the Richmond Professional Institute, College of William and Mary.

As a condition of the agreement with William and Mary, the Foundation obligated itself to raise the sum of $100,000.00 to provide the school with a permanent home. The Foundation secured the required sum through public subscription. A portion of the funds was used by the Foundation to purchase R.P.I.'s first building, located at the present site of the college on Franklin Street in Richmond. That building is still in use as a dormitory.

When William and Mary undertook the operation of R.P.I. in 1925, it was assumed that the state would supply the funds necessary to expand the physical plant of the college and that the Foundation would cease to exist, once it had raised the required $100,-000.00. That assumption proved incorrect. It was necessary for the Foundation to continue to acquire property for R.P.I. Over the years, it purchased 15 to 20 parcels, mortgaging its other property to pay the purchase price. Most of the property, when it had been paid for, was conveyed to the state in the name of the College of William and Mary.[1]

On February 7, 1941, the Foundation and the College of William and Mary entered into a written agreement defining the status of the property held by the Foundation. The agreement was recorded among the land records of the Chancery Court of the City of Richmond. In that agreement, the Foundation bound itself, upon the request of William and Mary:

". . . to transfer and convey unto the College all of the property of any and every kind now owned or hereafter acquired by the Corporation, provided, however, that such property shall not be so transferred, and conveyed unless and until all outstanding indebtedness of the Corporation, of whatever kind, shall have been fully discharged or assumed."

In 1956, the charter of the Foundation was amended to provide that:

"The property, including the real estate now owned or later acquired by the corporation, shall be indirectly owned by the Com-

(1) Code, § 23-40 provides that property standing in the name of the College of William and Mary "shall be the property of the Commonwealth."

monwealth of Virginia, College of William and Mary in Virginia, under an agreement dated February 7, 1941 . . . in which the corporation pledges itself, upon request, to transfer and convey unto the Commonwealth of Virginia, College of William and Mary, 'all of the property of any kind and every kind now owned or hereafter acquired by the corporation, provided, however, that such property shall not be transferred and conveyed unless and until all outstanding indebtedness of the corporation, of whatever kind, shall have been fully discharged or assumed.' " [2]

R.P.I. was operated as a division of William and Mary until July 1, 1962. On that date, pursuant to action of the General Assembly, the former division became a separate educational institution, known as Richmond Professional Institute, with its own board of visitors. Thus, for three of the tax years in question, 1960, 1961 and 1962, R.P.I. was operated by William and Mary while, for the fourth tax year, 1963, it was a separate institution.

Code, § 23-49.3, enacted as a part of the transition of R.P.I. into a separate institution, provides:

"All the real estate and personal property now existing and heretofore standing in the name of the corporate body designated 'The Colleges of William and Mary', located in Richmond, and heretofore exclusively used by the Richmond Professional Institute as a division of the College of William and Mary, shall be transferred to and be known and taken as standing in the name, and to be under the control, of the corporate body designated the 'Richmond Professional Institute'. Such real estate and personal property shall be the property of the Commonwealth."

The three parcels of land which the city seeks to tax are still held by the Foundation although each is debt-free except for the liability, if any, for the taxes in dispute. On two of the parcels there is located a large dormitory for female students. On the third parcel a residence is located which is rented to two ladies who have no official connection with R.P.I. This latter parcel is held for future

(2) By an amendment to the Foundation's charter in 1964, adopted after the present litigation was commenced, it was provided that the property of the Foundation "shall be indirectly owned by the Commonwealth of Virginia and by the Richmond Professional Institute. Upon request of the Board of Visitors of Richmond Professional Institute, the Corporation shall convey all real estate owned by it to the Commonwealth of Virginia for the use of Richmond Professional Institute." It was further provided that upon dissolution of the Foundation, its net assets shall be paid over to Richmond Professional Institute if it, or a successor institution, shall be in existence as a public corporation of the Commonwealth; otherwise, such assets shall be paid over to the Commonwealth.

classroom expansion, provided necessary funds are appropriated by the General Assembly in the 1968-1970 biennium.

Present funds for the operation of the Foundation are derived from a $15,000.00 annual grant from the state as compensation for use of classroom buildings located on Foundation-held property, and from dormitory rental fees paid by students living in dormitories on Foundation-held property. The state pays the direct expenses for upkeep of the dormitories but is later reimbursed therefor by the Foundation.

When the Foundation has built up a reserve of funds, it purchases new property upon the request of the Board of Visitors of R.P.I. Recently, acting upon such a request, the Foundation purchased, for approximately $300,000.00, Monroe Terrace, a large apartment house in the college area, for use as a student dormitory.

Section 183 of the Constitution of Virginia exempts from taxation:

"(a) Property owned directly or indirectly by the Commonwealth or any political subdivision thereof. . . ." [3]

The crucial determination to be made here is whether the property held by the Foundation is owned indirectly by the Commonwealth.

We have not previously decided what constitutes indirect ownership of property by the state. In the only case touching upon the point, *Fireman's Mut. Aid Ass'n v. Com.*, 166 Va. 34, 184 S. E. 189, this court held taxable the intangible property of an association of Richmond firemen, formed to accumulate a fund, through assessments, to provide pensions for its members. Such property, it was stated, was not owned directly or indirectly by the state or by the city of Richmond because neither political entity had "any control, or, in fact, anything to do with the operation and direction of the interests or affairs" of the association. 166 Va., at p. 38.

The Foundation contends that its property is owned indirectly by the Commonwealth and is thus exempt from taxation because, unlike the situation in the Richmond fireman's association case, "the Commonwealth through one of its governmental instrumentalities, R.P.I., has complete control over the Foundation's property."

The city, on the other hand, contends that the Foundation's property is not owned indirectly by the Commonwealth and is not entitled to exemption because, like the situation in the Richmond

(3) Code, § 58-12 (1) gives statutory effect to the constitutional provision concerning exemption from taxation of property of the Commonwealth or its political subdivisions.

fireman's association case, R.P.I. "has no indicia of ownership" and has no control over the Foundation's property.

The trial court was of opinion that property may be owned indirectly by the Commonwealth only when *legal title* thereto is held by a public corporation created, managed and controlled by the state. The city adopts this view in its brief, where it argues that only when the property held by the Foundation is actually conveyed to R.P.I., may such property be considered as owned indirectly by the Commonwealth.

The fallacy of the city's position may be easily demonstrated. The city overlooks the plain language of Code, § 23-49.3. That Code section provides that property standing in the name of R.P.I. "shall be the property of the Commonwealth." Thus, property actually standing in the name of R.P.I. is owned *directly* by the Commonwealth, by force of the cited Code section, and not indirectly, as the city would have us believe.

Obviously, then, something less than the holding of actual legal title by an instrumentality of the state is contemplated by the constitutional clause "property owned . . . indirectly by the Commonwealth." The city's position ignores this truism just as it does the theory of the separation of the legal and the equitable title to property. Though bare legal title to property may rest in someone else, if the beneficial interest therein is vested in a public corporation created, managed and controlled by the state, then that property must be said to be owned indirectly by the Commonwealth.

This latter situation is precisely that which exists with respect to the property held by the Foundation.

The terms of the 1941 agreement between the Foundation and William and Mary and the provisions of the charter of the Foundation show conclusively that the beneficial interest in the property held by the Foundation was vested in William and Mary and that the latter had the power to control the disposition of the property. R.P.I., through the legislation establishing it as a separate institution and by subsequent amendments to the charter of the Foundation, has succeeded to the interest and the power previously held by William and Mary.

Under the provisions of the agreement and the Foundation's charter, R.P.I. is clothed with the right to request and receive conveyance of the property held by the Foundation. The obligation assumed by the Foundation with respect to the property is neither conditional nor discretionary.

As to that property held by the Foundation which is unencumbered, R.P.I. is entitled to demand and receive conveyance thereof at any time. As to any property so held which is encumbered, R.P.I. can, merely by assuming the indebtedness thereon, likewise demand and receive conveyance thereof at any time.

The Foundation is not free, as the city argues, to "sell its property tomorrow . . . if an interested purchaser could be found." The rights of R.P.I., under the publicly recorded agreement and charter, are paramount and if the Foundation, in breach of its obligation, sells the property to a third party, such sale surely would be in violation of the rights of R.P.I.

Further evidence of the beneficial interest of R.P.I. in the property held by the Foundation is found in the fact that its right to demand conveyance is coupled with the right to use the property. Two of the parcels here in dispute are used for the location of a dormitory for R.P.I. students—a use directly connected with the public purposes of the college. The third parcel, although now rented to outsiders, is held for the near-future use of R.P.I. as the site of a classroom building—a use even more directly connected with the purposes of the institution.

By the terms of Code, § 23-14, R.P.I. is declared to be a public body and constituted as a governmental instrumentality for the dissemination of education.

Code, § 23-49.2 provides that the Board of Visitors of R.P.I. "shall be a corporation under the style of 'Richmond Professional Institute'." Code, § 23-49.4 provides that members of the Board of Visitors of R.P.I. are to be appointed by the Governor of the Commonwealth.

By Code § 23-1, each state educational institution is required to report annually to the State Superintendent of Public Instruction and the State Council of Higher Education upon the condition and progress of the institution, as well as many other items of administrative detail.

At each session of the General Assembly since R.P.I. became a separate institution, large sums of money have been appropriated from the public treasury to support the operation of the school.

R.P.I. was, therefore, created by the state as a public body and a governmental instrumentality. It is managed and controlled by the state through a public corporation established for those purposes. It is supported financially by the state with public funds. It is but an arm of the state, established and empowered to carry on specific

public purposes. *Phillips* v. *University*, 97 Va. 472, 474-476, 34 S. E. 66.

Since R.P.I. is such a public corporation created, managed and controlled by the state, and since it owns the beneficial interest in the property, the bare legal title to which is held by the Foundation, it follows that such property is owned indirectly by the Commonwealth.

And, since the property is owned indirectly by the Commonwealth, it matters not that one of the parcels in dispute is rented to outsiders. Only property not belonging to the state, which is otherwise exempt, loses its exempt status when it is leased or becomes a source of revenue or profit, under the provisions of Section 183 of the Constitution.

Having concluded that the property in question is owned indirectly by the Commonwealth, it is unnecessary to consider the Foundation's further contention that the property is exempt from taxation under Section 183 (d) of the Constitution, relating to the property of incorporated institutions of learning.

We hold, for the reasons given, that the three parcels of land here in dispute are exempt from taxation by the city. Accordingly, the judgment of the trial court will be reversed and set aside and final judgment will be entered here in favor of the Foundation.

*Reversed and final judgment.*